**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 27 2014, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ANNA KIRKMAN**
Eskenazi Health
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF: E.G., | ) ) ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No.  49A02-1308-MH-724 |
| ESKENAZI HEALTH MIDTOWN COMMUNITY MENTAL HEALTH CENTER, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49F03-9208-MH-442

**February 27, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, a sixty-two-year-old man who has been afflicted with mental illness for a substantial portion of his life sought review of his regular commitment and treatment order, arguing that he was now an outpatient and that the effects of his medication were depleting the quality of his life. Following a hearing, the probate court concluded that E.G. was dangerous to others and ordered that he take all prescribed medications.

Appellant-respondent E.G. now appeals the probate court's order concluding that petitioner-appellee Eskenazi Health Midtown Community Mental Health Center (Midtown) proved by clear and convincing evidence that E.G. was dangerous to others and ordering E.G. to take his prescribed medications. More particularly, E.G. argues that the probate court based its conclusion on vague allegations and that Midtown failed to prove that the benefits of his treatment outweighed the negative impact that it has on the quality of his life. Concluding that Midtown presented clear and convincing evidence that E.G. is dangerous to others and that the benefits of his treatment outweigh its risks, we affirm the judgment of the probate court.

FACTS

E.G. is sixty-two years old and has a long history of mental illness. In August 1992, an emergency detention[1] was obtained over E.G. From 1997 through the present, there has been involuntary commitment activity.

---

[1] An emergency detention only permits the individual to be held for seventy-two hours. J.S. v. Ctr. for Behavioral Health, 846 N.E.2d 1106, 1111 (Ind. Ct. App. 2006).

On February 5, 2010, Midtown obtained a regular commitment of E.G. Except for a period in 2010 and 2011 when E.G. received treatment at Logansport State Hospital, Midtown has provided E.G. with mental health services off and on since 1992. The probate court renewed E.G.'s regular commitment by order without a hearing on January 25, 2011, January 4, 2012, and January 4, 2013.

On May 29, 2013, E.G. filed a motion for a hearing for a review or dismissal of the regular commitment. At the time of the review hearing, Midtown psychiatrist, Dr. Thota Rao, had been treating E.G. for approximately four years. Dr. Rao diagnosed E.G. with bipolar disorder, severe mania with psychotic features, narcissistic personality disorder, and antisocial personality disorder.

At the July 24, 2013 hearing, Dr. Rao testified that in December 2012, E.G. engaged in an altercation with his female roommate who called 911, and E.G. was arrested. According to E.G., he had pushed his roommate, and she subsequently secured a protective order against him. Dr. Rao also stated that only two days before the review hearing, E.G. had threatened that "if he sees Dr. Kellams,[2] then he will punch his face." Tr. p. 8. Dr. Rao further testified that E.G. had poor insight into his mental illness, refusing to take his medication, including Depakote, which he had stopped taking in April 2013.

E.G. told the probate court, "I would like to know how I could relapse from something I don't even have in the first place?" Tr. p. 38. E.G. stated that Depakote

---

[2] Dr. Jeffrey Kellams is the Medical Director of Midtown Community Mental Health Center and the Chief of Psychiatry Services at Eskenazi Health. Appellee's Br. p. 3.

made him feel "foggy," like he was walking through "cob webs" and had "dark rain clouds" overhead. Id. at 26. When asked whether Depakote made E.G. slow and sedated, Dr. Rao explained, "he's getting leveled pretty much. He doesn't like – most of the Bi Polar's [sic] they don't like to be in a steady state level, because they want to be on the high." Tr. p. 15. To sustain a high energy level, E.G. drank Monster Energy drinks. "[H]e wants to be high all the time, but Depakote makes him on a steady state level. He doesn't like that. That's one of the reasons why – he's told me that, you know I don't want to take the Depakote." Id.

The trial court asked E.G. if he had talked to his doctors about trying a different drug, and E.G. responded, "I asked them to go to h*ll, and leave me alone." Tr. p. 37. The trial court also asked Dr. Rao if E.G. could try a different medication other than Depakote; Dr. Rao agreed that they could consider an alternative therapy, but added that E.G. responds "very well" to Depakote. Id. at 39. In addition to the Depakote, E.G.'s medication regimen included Invega Sustenna, Synthroid and Cogentin.

Because E.G. lacked insight into his illness and was dissatisfied with how his medication stabilized and regulated his mood, E.G. stopped taking his medication. According to Dr. Rao, "[E.G.] would end up in the hospital . . . when I talked to him day before yesterday, he was pretty tangential, and he hung up on me on the phone." Tr. p. 23. Dr. Rao further stated: "I was a little bit scared, because I was about to A&R[3] him . .

---

[3] Dr. Rao used the term A&R as an acronym for Apprehension and Return, which is appropriate when an individual who is committed under Indiana Code Article 12-26 fails to comply with the requirements for

4

. because I don't want to see that go to that level." Id. Dr. Rao testified that he would treat E.G. on an outpatient basis but that E.G. would have to work with him as well.

Following the July 24 hearing, the probate court entered an order, finding E.G. dangerous to others and in need of the custody, care and treatment from Midtown for a period expected to exceed ninety days. The order included special conditions that E.G. take all medications as prescribed, attend all clinic sessions, maintain his address and phone number with the court, abstain from alcohol and drugs, and not harass or assault anyone. E.G. now appeals.

## DISCUSSION AND DECISION

### I. Commitment Proceedings – Generally

As recently recognized by a panel of this Court, "[p]roceedings for involuntary commitment are subject to federal due process requirements." In re Commitment of T.K., 993 N.E.2d 245, 248 (Ind. Ct. App. 2013). Commitment to a mental health facility involves a substantial loss of liberty, and therefore requires due process protection. Id.

"'Because everyone exhibits some abnormal conduct at one time or another, loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior.'" Id. at 249 (quoting In re Commitment of J.B. v. Midtown Mental Health Cntr., 581 N.E.2d 448, 451 (Ind. Ct. App. 1991)). Consequently, in commitment proceedings, the burden falls on the petitioner to prove by clear and convincing evidence that: "(1) the individual is mentally ill and either

outpatient status. See Ind. Code § 12-24-8. In 2011, E.G. returned to Midtown pursuant to an Apprehension and Return Order. Appellant's App. p. 11.

dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate. Ind. Code § 12-26-2-5(e).

## II. Sufficiency of the Evidence

E.G. challenges the sufficiency of the evidence to sustain his commitment and treatment regimen. When reviewing the challenge to the sufficiency of the evidence in a commitment proceeding, we look to the evidence and reasonable inferences most favorable to the probate court's decision. In re the Commitment of G.M., 743 N.E.2d 1148, 1150-51 (Ind. Ct. App. 2001). Additionally, if the commitment order is one that a reasonable person could have drawn, we will affirm the order even if other reasonable conclusions are possible. Id. at 1151.

## A. Dangerous to Others

E.G. argues that there was insufficient evidence to show that he is dangerous to others as the probate court concluded. "Dangerous" is defined as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind. Code § 12-7-2-53. A court need not wait until a threat is acted upon before concluding that a person is dangerous. T.K., 993 N.E.2d at 250.

Here, two days before the review hearing, E.G. told Dr. Rao that he would "punch" Dr. Kellams in his face. Tr. p. 8. E.G. exhibited his ability to become physically violent when he pushed his roommate in 2012. Id. at 7. Additionally, in 2011, E.G. engaged in multiple altercations while in prison and during inpatient psychiatric

6

admission.  Id. at 8-9.  Thus, E.G. has shown the capability to express his anger through physical violence, indicating the serious nature of E.G.'s threat.  Consequently, Midtown presented sufficient evidence that E.G. is dangerous to others.

### B. Forced Medication Order

### Waiver

Next, E.G. challenges the sufficiency of the evidence to sustain the forced medication order requiring him to take any medication for mental illness, but specifically Depakote.  As an initial matter, Midtown argues that E.G. waived this argument because he did not petition the probate court pursuant to Indiana Code section 12-27-5-2, which provides, "[a]n involuntary patient who wants to refuse to submit to treatment or a habilitation program may petition the committing court or hearing officer for consideration of the treatment or program."  Thus, according to Midtown, while E.G.'s eligibility for discharge from commitment may be properly considered, the appropriateness of his treatment may not.

Midtown directs this Court to K.W. v. Logansport State Hospital, 660 N.E.2d 609 (1996), in support of its argument that E.G. has waived his argument challenging his treatment.  The K.W. Court determined that neither K.W.'s request to have his commitment reviewed nor his hearing could be characterized as raising treatment issues. Id. at 613.  Nevertheless, the panel also stated that "we find nothing which indicates that a recommitment hearing is an inappropriate forum for judicial consideration of a patient's

7

particular treatment program, assuming that the patient has clearly presented the issue to the court." Id. (emphasis in original).

In the instant case, several months before the July 24, 2013 hearing, E.G. repeatedly requested the doctors at Midtown decrease his dose of Depakote and to take him off of the drug entirely. Tr. p. 10. Dr. Rao decreased E.G.'s dosage but refused to completely take E.G. off of Depakote. Id. at 10, 17. E.G. objected and stopped taking Depakote on his own. Id. at 25-26.

Further, both parties knew that the Depakote regimen was going to be a central issue at the hearing, insofar as both parties presented arguments on the subject. Midtown argued that E.G. should remain on commitment, in part, because he would not take his medications otherwise. Tr. p. 41. E.G.'s lawyer argued that his concerns about Depakote were legitimate and that he was functioning well despite having discontinued its use on his own. Id. at 43. In light of the above, Midtown was placed on notice that E.G. was unhappy with this treatment regimen.

Furthermore, "[w]e prefer to decide a case on the merits whenever possible." Omni Ins. Group v. Poage, 966 N.E.2d 750, 753 (Ind. Ct. App. 2012). Finally, in this case, judicial economy favors holding one hearing for both issues because they are so closely related. Accordingly, we decline to find that E.G. waived his argument regarding his treatment with Depakote.

## Merits

Proceeding to the merits, to overcome a patient's right to refuse treatment, the State must show by clear and convincing evidence that:

> 1) a current and individual medical assessment of the patient's condition has been made; 2) that it resulted in the honest belief of the psychiatrist that the medications will be of substantial benefit in treating the condition suffered, and not just in controlling the behavior of the individual; 3) and that the probable benefits from the proposed treatment outweigh the risk of harm to, and personal concerns of, the patient.

J.S. v. Ctr. for Behavoral Health, 846 N.E.2d 1106, 1114 (Ind. Ct. App. 2006).

> Equally important to the court's analysis are three additional limiting elements.
>
> - There is no less restrictive form of treatment available to this patient.
> - There must be a nexus between the drug therapy and the committing decree.
> - The infinite administration of medications is impermissible.

Id.  At the hearing, the psychiatrist responsible for the treatment must testify, and the patient may present contrary expertise.  Id.

E.G. challenges the sufficiency of the evidence of only one element: whether Midtown proved by clear and convincing evidence that the benefits of Depakote outweigh the risk of harm and E.G.'s concerns.  Specifically, as noted above, E.G. testified that Depakote made him feel "foggy headed" and like he was "walking through cob webs all the time." Tr. p. 26.  E.G. also analogized the effects of Depakote to a "dark rainy day." Id.

Conversely, Dr. Rao testified that Depakote does not make E.G. slow. Tr. p. 14-15.  Instead, Depakote had the intended effect of stabilizing E.G.'s symptoms of bipolar

9

disorder, which E.G. did not like. Id. at 15. Dr. Rao stated that E.G. prefers to be in a constant state of high energy, which Depakote regulated: "he wants to be high all the time, but Depakote makes him on a steady state level. He doesn't like that." Id.

In short, E.G. does not believe he has a mental illness, does not like the way Depakote makes him feel, and, therefore, does not want to take it. Nevertheless, there is no evidence that Depakote produced any risk of harm to E.G. To the contrary, Dr. Rao testified that he would consider a different course of treatment for E.G. but that E.G. "responded very well to Depakote," and that if E.G. stopped taking his medications, "[h]e would end up in the hospital." Tr. p. 23, 39. Under these facts and circumstances, Midtown established by clear and convincing evidence that the benefits of Depakote are superior to the risks and E.G.'s concerns, and we affirm the decision of the probate court.

The judgment of the probate court is affirmed.

NAJAM, J., and CRONE, J., concur.