COMMITMENT OF T.S., Appellant,

v.

LOGANSPORT STATE HOSPITAL,
Appellee.

No. 79A02–1101–MH–86.

Court of Appeals of Indiana.

Nov. 23, 2011.

Carlos I. Carrillo, Ball Eggleston PC, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

T.S. appeals the Tippecanoe Circuit Court's denial of T.S.'s request that he be removed from the Sexual Responsibility Program ("SRP") at Logansport State Hospital ("the Hospital"). On appeal, T.S. presents six issues, relating both to the propriety of his commitment and the propriety of his continued participation in the SRP. Concluding that T.S. has waived any issue regarding the propriety of his commitment to the Hospital and that the State presented sufficient evidence supporting the Hospital's decision to require T.S. to participate in the program, we affirm.

### Facts and Procedural History

T.S. was involuntarily committed to the Hospital on February 5, 2004. At the time of his commitment, the trial court found that T.S. "is suffering from schizo-affective disorder and is gravely disabled and is a proper subject for admission, diagnosis, care and treatment in a psychiatric hospital." Appellant's App. p. 5. After being committed to the Hospital, T.S. was assigned to the SPR by Hospital staff. The SPR is a program that was developed to treat male patients who have committed criminal or deviant sexual acts and who may have previously been incarcerated. Patients are assigned to the SRP if they have an individual need to participate in the program. The SRP has various levels, starting with education, and to move up to a higher level, the patient needs to demonstrate that he is changing his patterns of behavior regarding his sexual issues. There is no set time for completion, as one patient completed the program in under six months, whereas others take years to complete the program.

T.S.'s participation in the SRP is based on his history of criminal, sexual misconduct and his disclosure to Hospital staff that he has committed sexual offenses against numerous victims. Despite years in the program, T.S. has yet to complete the SRP. At one point, when the SRP had seven levels, T.S. claimed to have advanced to the fifth level. Although T.S. has completed the educational levels of the program, he has not sufficiently demonstrated behavioral changes relating to his sexual issues.

On October 25, 2010, T.S. sent a handwritten letter to the trial court, asking the court to support his refusal to participate in the SRP. The trial court set the matter for a hearing and appointed counsel to represent T.S. A hearing on the matter was held on December 16, 2010. In sup-

port of his request, T.S. testified on his own behalf. The State, representing the Hospital, called Judy Gilbert ("Gilbert"), a clinician in charge of the SRP program, and Dr. Rohit Borkhetaria ("Dr. Borkhetaria"), both of whom opined that T.S. should remain in the SRP. At the conclusion of the hearing, the trial court found that the State presented clear and convincing evidence establishing that it was in T.S.'s best interests to remain in the SRP. The court therefore denied T.S.'s petition to intervene. T.S. now appeals.

## I. Waiver

■ T.S. presents several issues regarding the propriety of his commitment. As noted by the State, however, T.S. did not present any of these issues to the trial court in his petition or during the hearing. And in the Notice of Appeal filed by T.S., he indicated that he was appealing only from the trial court's December 16 order denying his petition to be removed from the SRP. Appellant's App. p. 53.

Nor can it be said that T.S. is appealing from the trial court's approval of the periodic report seeking to continue T.S.'s commitment. This report was filed on February 9, 2010, and was approved by the trial court on February 12, 2010, without a hearing and without any apparent objection on T.S.'s part. *See* Appellant's App. p. 3. There is no indication that T.S. filed a Notice of Appeal from that order. *See id.* At the subsequent December 16, 2010 hearing on T.S.'s petition, the issue of the propriety of the commitment was not presented, and T.S. claimed only that his continued participation in the SRP was improper.

■■ As we explained in *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC.,* 764 N.E.2d 647, 651 (Ind.Ct.App. 2002), a party may not present an argu-

ment or issue to an appellate court unless the party raised that argument or issue to the trial court. The rule of waiver in part protects the integrity of the trial court in that the trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. *Id.* Conversely, an intermediate court of appeals is not the forum for the initial decisions in a case. *Id.* Accordingly, an argument or issue not presented to the trial court is generally waived for appellate review. *Id.* We therefore conclude that T.S. may not present the issue of the propriety of his commitment for the first time on appeal.

## II. Propriety of Continued Participation in the SRP

■ The only issue properly before us then is the trial court's order denying T.S.'s petition to be removed from the SRP. Both Indiana Code sections 12–27–2–1 (2007) and 12–27–5–2 (2007) provide avenues by which a committed patient may place the appropriateness of a particular course of treatment or habilitation program before a court for judicial review. *K.W. v. Logansport State Hosp.,* 660 N.E.2d 609, 613 (Ind.Ct.App.1996).

■ Section 12–27–2–1 provides in relevant part that a patient is entitled to "[m]ental health services or developmental training: (A) in accordance with standards of professional practice; (B) appropriate to the patient's needs; and (C) designed to afford a reasonable opportunity to improve the patient's condition." As noted in *K.W.,* "if these rights are violated, a patient may bring an action under I.C. 12–27–5–2 in a court of competent jurisdiction...." 660 N.E.2d at 613. Section 12–27–5–2 provides that an involuntarily-committed pa-

tient[1] "who wants to refuse to submit to treatment or a habilitation program may petition the committing court or hearing officer for consideration of the treatment or program." I.C. § 12–27–5–2(a); *K.W.*, 660 N.E.2d at 613. Thus, courts are empowered by this statute to reject a proposed treatment or program. *See In re Commitment of M.P.*, 510 N.E.2d 645, 646 (Ind.1987) (citing predecessor statute).

"However, the provision does not establish the standard which the court should employ when determining whether or not the involuntarily committed mental patient should be medicated or treated against his will." *Id.* In addressing this question, our supreme court noted in *M.P.* that the State has a "statutory and a constitutional duty to provide treatment for the mentally ill." *Id.* At the same time, however, a patient has a liberty interest in "remaining free of unwarranted intrusions into his physical person and his mind while within an institution." *Id.* (citing *Mills v. Rogers*, 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982)). The court in M.P. stated that "[i]t cannot be seriously disputed that forcible medication of a mental patient interferes with that liberty interest." *Id.*

The question before the court in *M.P.* was how to balance the patient's liberty interest, the State's *parens patriae* power to act in the patient's best interests, and the State's duty to provide the patient with treatment. *Id.* The court concluded that, in order to override a patient's statutory right to refuse treatment, the State must demonstrate by clear and convincing evidence the following: (1) a current and individual medical assessment of the patient's condition has been made; (2) that it resulted in the honest belief of the psychiatrist that the medications will be of substantial benefit in treating the condition suffered, and not just in controlling the behavior of the individual; and (3) that the probable benefits from the proposed treatment outweigh the risk of harm to, and personal concerns of, the patient. *Id.* at 647.

At issue in *M.P.*, however, was the question of forcible *medication.* In that case, the patient had been medicated with antipsychotic drugs and experienced several severe side-effects. In the present case, T.S. is not being forcibly medicated. He is instead being required to participate in a sexual responsibility program. Thus, the intrusion at issue is much less severe than that at issue in *M.P.* This was recognized in *K.W.*, where the court noted:

> Our Supreme Court's decision in *In re M.P.* . . . established a burden which the State must meet to override a patient's refusal to submit to anti-psychotic medication. The applicability or inapplicability of the *M.P.* standard to a situation in which a patient "refuses" to submit to a non-medicinal treatment plan . . . is a question for another day.

*K.W.*, 660 N.E.2d at 614 n. 9. Today that question is before us.

We are of the opinion that the general principles enounced in *M.P.* should apply to forcible treatment as well as forcible medication. Indeed, our supreme court in *M.P.* referred both to forcible medication and to "treatment." *See* 510 N.E.2d at 647. And the court also referred to "treatment" when laying out the three-part test that the State must demonstrate by clear and convincing evidence.

There are portions of *M.P.*, however, that appear to be applicable only to forcible medication. We specifically refer to

---

1. Voluntarily committed patients have a statutory right to refuse treatment. *See* Ind.Code § 12–27–5–1 (2007) ("An adult voluntary patient who is not adjudicated mentally incompetent may refuse to submit to treatment or a habilitation program.").

that portion of the court's opinion that limited the State's right to forcibly medicate:

Equally basic to court sanctionable forced medications are the following three limiting elements. First, the court must determine that there has been an evaluation of each and every other form of treatment and that each and every alternative form of treatment has been specifically rejected. It must be plain that there exists no less restrictive alternative treatment and that the treatment selected is reasonable and is the one which restricts the patient's liberty the least degree possible. Inherent in this standard is the possibility that, due to the patient's objection, there may be no reasonable treatment available. This possibility is acceptable. The duty to provide treatment does not extend beyond reasonable methods. Second, the court must look to the cause of the commitment. Some handicapped persons cannot have their capacities increased by anti-psychotic *medication*. The *drug therapy* must be within the reasonable contemplation of the committing decree. And thirdly, the indefinite administration of these *medications* is not permissible. Many of these *drugs* have little or no curative value and their dangerousness increases with the period of ingestion. The court must curtail the time period within which they may be administered. If a patient does not substantially benefit from the *medication*, it should no longer be administered.

*M.P.*, 510 N.E.2d at 647–48 (emphases added).

We think it clear from the court's discussion regarding "medication" and "drugs" that the court was concerned with the forcible administration of pharmacological medications, not simple counseling or therapy. *Cf.* 53 Am.Jur.2d Mentally Im-

paired Persons § 103 (noting that "[t]he controversy concerning the right of a mentally incompetent person to refuse medication has centered on psychotropic drugs.").

We do not believe that "each and every other form of treatment" must be considered and rejected before requiring a psychiatric patient to undergo counseling or non-drug-related therapy. Indeed, we think it was less-invasive treatments, such as counseling programs, to which our supreme court in *M.P.* was referring when it held that all other forms of treatment be considered before forcibly medicating a patient.

Moreover, we fail to see why therapy such as counseling must be exactly defined within the committing decree. At the time of the committing decree, the nature and scope of the patient's particular counseling needs are often not yet fully known. We therefore decline to hold that a hospital needs to obtain a new judicial decree each time it is decided that an involuntarily-committed patient needs to pursue a different course of counseling.

Finally, we note that counseling and therapy are most often focused on behavior, and it is behavior that society is concerned with in individuals like T.S., with a history of criminal, sexual misconduct. The *M.P.* proscription about the inappropriateness of forcible medication is simply inapplicable to counseling and non-drug-related therapy. It is therefore unsurprising that T.S. presented no evidence even suggesting that the long-term use of non-drug-related therapy poses the same type of risk as psychoactive drug therapy.

■ Applying the relevant portions of the *M.P.* holding to the facts of the present case, here the State was required to prove by clear and convincing evidence that: (1) a current and individual medical

assessment of T.S. had been made; (2) that this assessment resulted in the honest belief of the medical professionals that T.S.'s continuation in the SRP would be of substantial benefit to treating T.S.'s condition; and controlling his behavior; and (3) that the probable benefits of the SRP outweighed any risks of harm to T.S. and his personal concerns.

Under our standard of review,[2] we conclude that the State did present clear and convincing evidence that T.S. should remain in the SRP. First, it is clear that a current and individual medical assessment of T.S.'s condition had been made. In fact, the Hospital had recently filed a periodic report seeking to continue T.S.'s commitment on February 12, 2010, before the hearing on his petition seeking termination of his participation in the SRP program. And as noted above, T.S. made no objection to this report. Moreover, both Gilbert and Dr. Borkhetaria testified at the hearing regarding T.S.'s current condition.

There was also evidence clearly establishing that both Gilbert and Dr. Borkhetaria believed that T.S.'s continued participation in the SRP would be of substantial benefit in treating the condition suffered. Gilbert believed that T.S.'s continued participation in the SRP was important due to his lengthy history of sexual misconduct and his admission that he had committed sex offenses against numerous victims. Similarly, Dr. Borkhetaria, who testified that he had been treating T.S. for two years, testified that, in his professional opinion, T.S. needed to complete the SRP because T.S. continued to exhibit the characteristics of a sexual predator. Indeed, Dr. Borkhetaria stated that there were no other programs "that would take care of as many problems as [T.S.] has that we are capable of taking care of." Tr. p. 30.

Lastly, there was evidence clearly demonstrating that the probable benefits from T.S.'s continued participation in the SRP outweighed the risk of harm to, and personal concerns of T.S. When asked, "do the probable benefits of the proposed treatment[,] that being the sexual responsibility program[,] outweigh the risk of harm to [T.S.]," Dr. Borkhetaria replied, "Absolutely." Tr. pp. 30–31. And when asked if the benefits of the SRP outweighed T.S.'s personal concerns about the program, Dr. Borkhetaria replied, "Yes." *Id.*

### Conclusion

In summary, the evidence favorable to the trial court's judgment supports the trial court's decision to deny T.S.'s request to be removed from the SRP. The fact that T.S. has yet to complete the program is not, by itself, a valid reason to excuse him from the program.[3] In fact, T.S.'s continued failure to complete the SRP actually indicates that he is still in need of the treatment that the SRP offers. The State presented testimony from experts that T.S. was still in need of the treatment offered by the program and that the risks associated with the program were outweighed by the potential benefit that T.S.

2. Much of T.S.'s argument in this regard is simply a request that we consider his self-serving testimony, reject the testimony of the State's witnesses, reweigh the evidence, and come to a conclusion different than that reached by the trial court. This is obviously not our prerogative on appeal. *See In re Commitment of J.B.*, 581 N.E.2d 448, 449 (Ind.Ct.App.1991).

3. If such were the case, a patient could obstinately decline to put forth the effort required to complete such a program and then be "rewarded" by not being required to complete the program.

might receive. We therefore affirm the decision of the trial court.

Affirmed.

BAILEY, J., and CRONE, J., concur.