## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sherry A. Fairchild,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 29, 2016

Court of Appeals Case No.
34A02-1507-CR-798

Appeal from the Howard Superior Court

The Honorable William C. Menges, Judge

Trial Court Cause No.
34D01-1312-FD-957

**Pyle, Judge.**

# Statement of the Case

Sherry A. Fairchild ("Fairchild") appeals her sentence, following a guilty plea, to Class D felony theft.[1]  Fairchild argues that her sentence was inappropriate, and she argues that the trial court erred by ordering her to submit to a urine drug screen.  Concluding that Fairchild has waived appellate review of any argument regarding the drug screen by failing to raise a contemporaneous objection and that she has failed to show that her sentence is inappropriate, we affirm her sentence.

We affirm.

# Issues

1.  Whether Fairchild has waived review of her challenge to the trial court's order for her to submit to a urine drug screen by failing to object.

2.  Whether Fairchild's sentence was inappropriate pursuant to Indiana Appellate Rule 7(B).

# Facts

On November 29, 2013, Fairchild and her friend went into a Walmart store in Howard County.  Fairchild purchased a box of syringes and then placed

---

[1] IND. CODE § 35-43-4-2(a).  We note that, effective July 1, 2014, a new version of the theft statute was enacted and that the offense of theft, for the total value of items that Fairchild was alleged to have taken, is now a Class A misdemeanor.  Because Fairchild committed this crime in 2013, we will refer to the statute in effect at that time.

additional items,[2] for which she had not paid, into her bag and exited the store. Fairchild was stopped by Walmart security personnel who then notified the Kokomo Police Department. After Fairchild consented to a search of her car, the police found a used syringe.

[4]     On December 4, 2013, the State charged Fairchild with Count 1, Class D felony unlawful possession of a syringe, and Count 2, Class D felony theft. On January 3, 2014, Fairfield was released on bond.

[5]     The following week, on January 10, 2014, Fairfield was arrested in Wabash County on a charge of Class D felony possession of methamphetamine ("Wabash County drug cause").[3] Fairfield pled guilty to the possession of methamphetamine charge in the Wabash County drug cause. On April 22, 2014, the Wabash Superior Court held a sentencing hearing, and Fairfield's sentence in that case was "taken under advisement pending [her] completion of the Wabash County Drug Court Program." (App. 53).[4]

---

[2] These items, which included socks, a bracelet, suntan lotion, and packages of underwear, had a total value of $29.43.

[3] This drug charge was filed under cause number 85D01-1312-FD-103.

[4] The information regarding Fairchild's Wabash County drug cause is derived from the presentence investigative report ("PSI") contained in a confidential volume of Fairchild's Appendix. Pursuant to Indiana Administrative Rule 9(G)(2)(b) and INDIANA CODE § 35-38-1-13, the PSI Report must be excluded from public access. However, in this case, the information contained in the PSI is "essential to the resolution" of Fairchild's claim. *See* Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

[6]     The following day, on April 23, 2014, Fairchild entered into a written plea agreement in this Howard County case.  In the plea agreement, she agreed to plead guilty to the Class D felony theft charge in Count 2 in exchange for the dismissal of Count 1.  The plea agreement also provided as follows:

> The sentence shall be left to the discretion of the Court after evidence and argument.  [Fairchild's] sentence shall include restitution, as determined by the Court at the time of sentencing.  Said sentencing shall be deferred during [Fairchild's] participation in the **Wabash** County Drug Court Program.
>
> * * * * *
>
> Should [Fairchild] successfully complete the Wabash County Drug Court Program, this [Howard County] cause shall be dismissed.
>
> Should [Fairchild] fail the Wabash County Drug Court Program, this matter shall be set for sentencing with the terms and conditions of that sentence decided by the Court after evidence and arguments presented by the parties.

(App. 28) (emphasis in original).

[7]     On April 30, 2014, the trial court held a guilty plea hearing.[5]  Fairchild pled guilty to the Class D felony theft charge, and the trial court accepted her guilty

---

[5] In its Statement of Facts, the State indicated that Fairchild "stipulated to the facts contained in the affidavit of probable cause." (State's Br. 6).  The transcript from the guilty plea hearing, however, indicates that Fairchild stipulated to the probable cause affidavit only "as it relate[d] to the count to which she [wa]s pleading" guilty.  (Tr. 5).

plea.[6] Per the plea agreement, the trial court deferred sentencing in the case and referred Fairchild to the Wabash County Drug Court Program with a directive for it to "inform the Court of [Fairchild's] completion or termination of their [sic] program." (App. 2, 31).

[8] Thereafter, the State filed—in Fairchild's Wabash County drug cause— numerous petitions to revoke her participation in the Wabash County Drug Court Program. Specifically, it filed revocation petitions on: May 13, 2014; August 22, 2014; November 3, 2014; and March 6, 2015. Each time, Fairchild "admitted to violating the terms of Drug Court[.]" (App. 53). Upon Fairchild's first two violations, the Wabash Superior Court ordered her to serve ninety days in jail. For her third violation, the Wabash Superior Court ordered her to serve 180 days in jail. However, on April 21, 2015, upon Fairchild's fourth violation, the Wabash Superior Court terminated her from the drug court program and ordered her to serve the balance of her suspended sentence, which was two years.

[9] That same day, on April 21, 2015, the State filed—in this Howard County cause—a request for the trial court to set a sentencing date on Fairchild's Class D felony theft conviction because she had violated the terms of the Wabash

---

[6] Fairchild asserts that there was "confusion" in this case, suggesting that the trial court accepted Fairchild's guilty plea before she pled guilty. (Fairchild's Br. 3). At the beginning of the guilty plea hearing, the trial court stated that it would "accept the recommendation[,]" (Tr. 5), but the chronological case summary indicates that Fairchild "enter[ed] a plea of guilty to Count 2, Theft, a Class D Felony[,] and [t]he Court accept[ed] [her] plea of guilty." (App. 3-4).

County Drug Court Program and had been terminated from the program. The trial court set a sentencing hearing for May 20, 2015, and it referred Fairchild to the Howard County Probation Department for a PSI to be compiled.

[10] The probation department met with Fairchild on May 15, 2015. During her interview with the probation officer, Fairchild admitted that she "was under the influence of drugs when [she] took a few items from WalMart." (App. 53). She stated that she had undergone previous substance abuse programs. She also admitted that she had used "speed, meth, heroin, and Suboxone while in Drug Court." (App. 56). Additionally, she admitted that her violations while in the Wabash County Drug Court Program had involved positive urine drug screens.

[11] On May 20, 2015, the parties appeared for a sentencing hearing, and Fairchild requested a continuance of the hearing. The trial court granted the continuance and reset sentencing for June 10, 2015. When the parties appeared in court that day, the trial court had the following conversation with Fairchild:

> JUDGE MENGES: . . . Show that the defendant appears in person with counsel . . . the State of Indiana appears . . . Ms. Fairchild, I want you to report immediately to the adult probation department and give them an instant urine drug screen and as soon as you have done so, I want you to report back here. Do you need assistance finding your way to the probation department?
>
> THE DEFENDANT: I have no idea where that's at.
>
> JUDGE MENGES: Would you please see that she makes it down and take her down the elevator, I don't trust her ability to navigate the stairs.

THE DEFENDANT:  Your Honor, this situation with my revoke [sic] the bond, I did not, I just wanted, would like to explain to you I'm not trying to disrespect the court by having them on.  I was in an accident --

JUDGE MENGES:  I don't have a problem with that --

THE DEFENDANT:  -- and I burnt my eyes, so that's why.

JUDGE MENGES:  I want you to give a urine drug screen and we'll go from there.

THE DEFENDANT:  OK, that's fine.

[12]   (Tr. 8).  The hearing was then suspended until the results of Fairchild's urinalysis were returned.  When the trial court came back on the record, it stated that Fairchild had "tested positive for methamphetamine, opiates, and amphetamines[.]"  (Tr. 9).  The trial court then ordered her bond revoked, stated that it was "reject[ing] the plea agreement[,]" and set the matter for trial.  (Tr. 9).

[13]   Thereafter, the trial court "note[d] that this matter was erroneously set for Jury Trial" because Fairchild had "previously entered a plea of guilty," which was accepted by the trial court.  (App. 5).  The trial court then set Fairchild's sentencing hearing for June 24, 2015.

[14]   At the sentencing hearing, Fairchild's counsel acknowledged that Fairchild had "an addiction issue" and argued that the trial court should not sentence her to the Department of Correction because the cost of her placement there was more expensive than the value of the items that she had stolen from Walmart.  (Tr.

14). Her counsel asked that Fairchild be allowed to serve her executed time on home detention. The prosecutor, on the other hand, argued that the trial court should follow the probation department's recommendation[7] that Fairchild be placed in a therapeutic community within the Department of Correction due to her substance abuse issues, especially because she had tested positive for methamphetamines, amphetamines and opiates when last in court.

[15] The trial court, when sentencing Fairchild, stated:

> I agree that the amount taken in connection with the charge in Count II was [of] relatively minor value and I would agree that the cost of housing the defendant is substantially higher than the value of those items. The cost to society of her continuing her addiction, however, is even higher than that. The court notes that she was referred to the Wabash County Drug Court Program but she did not successfully complete that. The idea that she could successfully complete home detention falls under the category of less supervision, therefore more chance that she will not get caught violating the terms and conditions of probation and in-home detention. And I probably should note that while she was in court two weeks ago, that while she tested positive, not only did she test positive for the substances as indicated by [the prosecutor], but she appeared to be visibly under the

---

[7] In the PSI, the probation department's recommendation was as follows:

> The Defendant is at a moderate risk to reoffend with her overall score being one point away from being high risk. It is suggested that moderate risk offenders receive a sentence which includes regular supervision. It is clear that because of her substance abuse issues regular supervision is not appropriate. Additionally, the Defendant did not successfully complete the most stringent form of community supervision due to those same issues. It is evident that in order to reduce the Defendant's risk of reoffending, the Defendant is in need of the most intensive program available for substance abuse treatment which at this time is Therapeutic Community.

(App. 56).

influence of one or more of them, so I'm very limited on what our options are. I agree with the probation department that the best chance of recovery is therapeutic community.

(Tr. 15-16). The trial court then imposed a three (3) year executed sentence in the Department of Correction with the recommendation that she be placed in a therapeutic community. The trial court further indicated that it would "reserve the right to modify her sentence upon successful completion of the therapeutic community." (Tr. 16). Fairchild now appeals.

# Decision

[16] Fairchild argues that: (1) the trial court erred by ordering her to submit to a urine drug screen; and (2) her sentence was inappropriate. We will review each argument in turn.

## 1. Drug Screen

[17] Fairchild argues that the trial court erred by ordering her to submit to a urine drug screen during the June 10, 2015 hearing, which was originally scheduled to be her sentencing hearing. She contends that the trial court's order was "illegal" and violated her right against self-incrimination under the Fifth Amendment and her right against unreasonable search and seizure under the Fourth Amendment of the United States Constitution. (Fairchild's Br. 7). Additionally, she makes a passing reference to Article 1, Section 11 of the Indiana Constitution, suggesting that she was subjected to a warrantless search in violation thereof.

[18]   Fairchild, however, has waived appellate review of any challenge to the trial court's order because she failed to raise a contemporaneous objection at the time the trial court ordered her to submit to the drug screen. As a general rule, the failure to object at the trial level results in waiver of an issue on appeal. *Bruno v. State*, 774 N.E.2d 880, 883 (Ind. 2002), *reh'g denied*. "The rule of waiver in part protects the integrity of the trial court in that the trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *T.S. v. Logansport State Hosp.*, 959 N.E.2d 855, 857 (Ind. Ct. App. 2011), *trans. denied.*

[19]   Here, Fairchild never objected to the trial court's directive that she submit to a urine drug screen, and she never argued to the trial court that its order to do so would violate the United States or Indiana Constitutions. Thus, she has waived her constitutional claims for appellate review. *See State v. Friedel*, 714 N.E.2d 1231, 1236 (Ind. Ct. App. 1999) (hold that the State waived challenge to the defendant's standing by failing to present claim to the trial court).

## 2. Sentence

[20]   Fairchild argues that her three-year executed sentence for Class D felony theft is inappropriate, suggesting that the trial court sentenced her for her drug addiction rather than for her theft conviction.

[21]   We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that her sentence is inappropriate.

*Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[22] Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224. Additionally, "[u]nder Indiana law, several tools are available to the trial court to use in fashioning an appropriate sentence for a convicted offender." *Sharp v. State*, 970 N.E.2d 647, 650 (Ind. 2012). These "penal tools"—which include suspension of all or a portion of the sentence, probation, executed time in a Department of Correction facility, and placement in a community corrections program—"form an integral part of the actual aggregate penalty faced by a defendant and are thus properly considered as part of the sentence subject to appellate review and revision." *Id.* (citing *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010)).

[23] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, Fairchild pled guilty to Class D felony theft in exchange for the dismissal of a Class D felony unlawful possession of a syringe charge. At the time of Fairchild's offense, a Class D felony conviction carried a sentencing range of six months to three years. I.C. § 35-50-2-7(a). After deferring Fairchild's sentence,

referring her to a drug program, and allowing her the opportunity to have her conviction dismissed upon successful completion of the drug program, the trial court imposed the maximum term of three years for Fairchild's Class D felony conviction after she failed to successfully complete the drug program. The trial court also recommended that Fairchild receive substance abuse treatment while in the Department of Correction, and it advised her that it would later consider a modification of her sentence upon successful completion of the Department of Correction's therapeutic program. Thus, the trial court utilized some of the available "penal tools" to fashion a sentence for Fairchild. *See Sharp*, 970 N.E.2d at 650.

[24] The nature of Fairchild's offense reveals that she bought a box of syringes and then stole various personal items by secreting them in her bag. Fairchild attempts to minimize the nature of her crime by pointing out that the value of the items she stole was not extravagant. However, Fairchild was admittedly under the influence of drugs when she stole the items from Walmart. The trial court acknowledged that "the cost of housing the defendant is substantially higher than the value of th[e] items" stolen but noted that the "cost to society of her continuing her addiction . . . [was] even higher than that" and that home detention was not an option given Fairchild's failed attempts while in the drug court program. (Tr. 15).

[25] Turning to Fairchild's character, we see from the record that Fairchild—who was thirty-five years old at the time of her offense—had two felony convictions at the time of sentencing. In 2003, Fairchild was convicted of Class B felony

aiding in robbery. She was placed on probation for this crime and admitted to twice violating probation, which resulted in continued probation upon the first violation and termination of probation upon the second violation. Fairchild was also convicted of Class D felony possession of methamphetamine in 2014. It was this conviction from her Wabash County drug cause for which she was originally placed in the Wabash County Drug Court Program. This drug court program was the same program that Fairchild was required to complete in this case if she wanted to have her theft conviction dismissed. Fairchild, however, violated the drug court program four times by using drugs. Indeed, Fairchild admitted that she had used "speed, meth, heroin, and Suboxone while in Drug Court." (App. 56). Furthermore, Fairchild showed up to court while under the influence of drugs and tested positive for methamphetamine, opiates, and amphetamines. Fairchild's actions show a lack of respect for the legal system and a lack of commitment to opportunities provided by the trial court.

[26] Fairchild has not persuaded us that that her three-year executed sentence, with the recommendation to a therapeutic program and the opportunity for a sentence modification upon successful completion of the therapeutic program, for her Class D felony conviction is inappropriate. Therefore, we affirm the trial court's sentence.

[27] Affirmed.

Baker, J., and Bradford, J., concur.