# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 31 2016, 9:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of P.G. (Minor Child), Child in Need of Services

J.G. (Father), P.G. (Guardian), and M.G. (Guardian),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 31, 2016

Court of Appeals Case No.
49A04-1604-JC-722

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Rosanne Ang, Magistrate

Trial Court Cause No.
49D09-1509-JC-2867

**Crone, Judge.**

# Case Summary

P.G. ("Grandmother") and M.G. ("Grandfather") (collectively "Grandparents") are the paternal grandparents and guardians of their teenage granddaughter, P.G. Grandparents and P.G.'s father, J.G. (collectively "Appellants"), appeal the trial court's determination that P.G. is a child in need of services ("CHINS"). Appellants argue that the trial court erred in finding P.G. to be a CHINS, detaining P.G., and refusing the predispositional placement recommendations of the Indiana Department of Child Services ("DCS"). Finding no error, we affirm.

# Facts and Procedural History[1]

P.G. was born in October 1999 and lived in Grandparents' home with Appellants. Grandfather has diabetes, and Grandmother is "confined to her bed[.]" Tr. at 68. Both require supplemental oxygen. P.G. repeatedly ran away from home, stayed with her adult boyfriend, did not attend school, and became pregnant. On September 24, 2015, DCS filed a petition alleging that P.G. is a CHINS. On that date, the trial court held a detention hearing at which Appellants did not appear; the record indicates that Appellants did not receive notice of the hearing until October 6. The trial court found that P.G.'s

---

[1] We remind Appellants' counsel that an appellant's statement of facts "shall be in narrative form and shall not be a witness by witness summary of the testimony." Ind. Appellate Rule 46(A)(6)(c). We also remind counsel that the table of contents in an appellant's brief "shall list each section of the brief, including the headings and subheadings of each section *and the page on which they begin.*" Ind. Appellate Rule 46(A)(1) (emphasis added).

removal from Grandparents' home was necessary for her protection and placed her at Valle Vista, a residential treatment facility. The trial court held a factfinding hearing in January 2016.[2] P.G. was scheduled to have labor induced the next day. In February 2016, the trial court issued an order finding P.G. to be a CHINS. In March 2016, the trial court held a dispositional hearing and issued an order continuing P.G.'s placement at Valle Vista. This appeal followed. Additional facts will be provided below.

# Discussion and Decision

## Section 1 – The trial court did not clearly err in finding P.G. to be a CHINS.

[3] Appellants contend that the trial court erred in finding P.G. to be a CHINS. This Court has "recognized that parents have a fundamental right to raise their children without undue influence from the State, but that right is limited by the State's compelling interest in protecting the welfare of children." *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011). "The CHINS statutes do not require that a trial court wait until a tragedy occurs to intervene. Instead, a child is a CHINS when he or she is endangered by parental action or inaction." *Id.* (citation omitted). "[T]he purpose of a CHINS adjudication is to protect children, not punish parents." *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010).

---

[2] P.G.'s mother was named in the CHINS petition but did not attend the hearing. The trial court later entered an order of default against her, and she does not participate in this appeal.

[4]     DCS has the burden of proving that a child is a CHINS by a preponderance of the evidence. Ind. Code § 31-34-12-3. In reviewing a trial court's CHINS determination, we neither reweigh evidence nor judge witness credibility. *In re S.K.*, 57 N.E.3d 878, 881 (Ind. Ct. App. 2016). Where, as here, the trial court has entered findings of fact and conclusions thereon sua sponte, our standard of review is governed by Indiana Trial Rule 52(A). *In re S.A.*, 15 N.E.3d 602, 607 (Ind. Ct. App. 2014), *aff'd on reh'g*, 27 N.E.3d 287 (2015), *trans. denied*. For the issues covered by the court's findings, we first consider whether the evidence supports the findings and then whether the findings support the judgment. *Id*.

> We will not set aside the findings or judgment unless they are clearly erroneous. Factual findings are clearly erroneous where there are no facts in the record to support them either directly or by inference. A judgment is clearly erroneous if it relies on an incorrect legal standard. We accord substantial deference to the trial court's findings of fact but not to its conclusions of law. Any issues not covered by the trial court's findings are reviewed under the general judgment standard, under which a judgment will be affirmed if it can be sustained on any legal theory supported by the evidence.

*Id*. (citations and quotation marks omitted).

[5]     DCS alleged that P.G. is a CHINS pursuant to Indiana Code Section 31-34-1-1, which provides that a child is a CHINS if, before the child becomes eighteen years of age,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the

child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

In its petition, DCS alleged that Appellants were unable to provide P.G. "with a safe, stable, and appropriate living environment with a necessary education"; that P.G. was "currently pregnant and believed to be residing with the father of her child, who is approximately twenty-six years old"; that P.G. had "behavioral issues" that Appellants "have been unable to adequately address, and [P.G.] continues to run away from home"; that P.G. was "not attending school regularly"; and that P.G. was in need of services that she was not receiving and was unlikely to receive without the court's involvement. Appellants' App. at 29.[3]

[6] In its order, the trial court made the following findings:[4]

4. At the time of the filing of the petition, Appellants resided [at Grandparents' home] in Indianapolis, Indiana. P.G. was living

---

[3] DCS incorporated its preliminary inquiry report into the petition by reference. Appellants' App. at 29. DCS mentions some of the report's findings in its appellate brief, *see, e.g.*, Appellee's Br. at 10 n.10, but DCS did not elicit any evidence regarding them at the factfinding hearing.

[4] The order refers to the parties and others by name. We use the foregoing designations or initials where appropriate.

with S.R., her boyfriend who was known by Appellants to be 26 years old.

5. At the time of the filing of the petition, P.G. was enrolled in school, but not attending.

6. Prior to the filing of the [CHINS petition], P.G. had run away from Grandparents' home "well over 15 times". Appellants stopped contacting law enforcement about the child's running away after they were required to go to the police station to make a formal report.

7. As of the date of the fact-finding, Appellants' only stated attempt to prevent future incidents of P.G. running from the home was to place a screw on the outside of her bedroom window so that it cannot be opened. Appellants have also installed a monitor in front of P.G.'s bedroom, but this monitor is not activated.

8. At the time of the fact-finding hearing, P.G. had been placed in a residential treatment facility for approximately three months and Appellants were engaged in family therapy. P.G. has not reached a point in her treatment where she could be safely returned to Grandparents' care.

9. P.G.'s physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision. Appellants have been unable to address P.G.'s repeated behavior of running from their home and allowed her to reside with a boyfriend who[m] they believed to be twenty-six years old. While Appellants place a strong emphasis on the slight physical adjustment made to the home since the filing of the petition, the issue at hand goes well beyond whether the child is physically able to open her bedroom window in the evenings. P.G. was allowed to live outside the care of her family for an extended period of time, was not attending school regularly and is now a mother herself. Appellants have not been able to provide her with the level of supervision required to meet her needs.

10. P.G. needs care, treatment, or rehabilitation that she is not

receiving and is unlikely to be provided or accepted without the coercive intervention of the court. P.G. is currently in a residential treatment facility and is receiving therapy with her family. P.G. has not received this type of treatment in the past and has exhibited behaviors that clearly warrant this level of extensive treatment. This Court's intervention is required to ensure that she receives the needed treatment and supervision as it has not been provided for her by her legal guardians or father.

*Id*. at 103-04.

[7] Appellants claim that the trial court erred in finding that they were unable or unwilling to provide appropriate supervision or education for P.G. This claim is contradicted by the evidence regarding P.G.'s numerous runaways and failure to attend school as required by state law. *See* Ind. Code § 20-33-2-6 (requiring students to attend school until they either graduate or turn eighteen unless allowed to withdraw under certain circumstances).[5] Appellants also claim that the trial court erred in finding that P.G.'s physical or mental condition was seriously endangered. We disagree. Although DCS presented little specific evidence regarding P.G.'s physical or mental condition at the factfinding hearing, it was reasonable for the trial court to infer that a pregnant fifteen-year-old who repeatedly runs away from her ailing grandparents' home

---

[5] Because the record supports the trial court's finding that Appellants were unable or unwilling to supply P.G. with necessary supervision or education, we need not address Appellants' assertion that they supplied her with appropriate food, clothing, shelter, and medical care.

to live with her twenty-six-year-old boyfriend is in serious physical and/or mental jeopardy.[6]

[8] Finally, Appellants claim that the trial court erred in finding that P.G. needs "care, treatment, or rehabilitation that she is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court." Appellants' App. at 104. Appellants note that P.G. had participated in therapy prior to DCS's involvement. Obviously, that therapy did not resolve the underlying issues that led to P.G.'s numerous runaways and truancy. Grandmother testified that P.G. would be able to continue that therapy if she were released from Valle Vista, but given P.G.'s persistent refusal to stay in Grandparents' home, it was reasonable for the trial court to conclude that P.G. needed treatment that she was not receiving and was unlikely to be provided or accepted without coercive court intervention.[7] Appellants also point to evidence that P.G.'s behavior had improved while she was at Valle Vista, and they suggest that she no longer needed treatment as of the factfinding hearing. But P.G. was in only the second of five treatment phases, and it was reasonable

---

[6] The reasonableness of this inference was borne out by later events. At the dispositional hearing, a DCS supervisor stated that P.G. was "doing as well as to be expected" at Valle Vista but had "a setback last week regarding self-harming." Tr. at 131, 132. It also bears mentioning that if P.G. had sexual intercourse with someone at least eighteen years old before she turned sixteen, she was the victim of the felony offense of sexual misconduct with a minor. Ind. Code § 35-42-4-9.

[7] Appellants' argument that they have rendered their home more secure is an invitation to reweigh evidence in their favor, which we will not do.

for the trial court to infer that she remained in need of treatment. In sum, the trial court did not clearly err in finding P.G. to be a CHINS.

## Section 2 – Appellants have waived any claim of error regarding P.G.'s detention.

[9] Next, Appellants contend that the trial court inappropriately detained P.G. after the detention hearing, for which they did not receive notice until days afterward.[8] DCS observes that Appellants never raised this issue before the trial court. "[A]n argument or issue not presented to the trial court is generally waived for appellate review." *Commitment of T.S. v. Logansport State Hosp.*, 959 N.E.2d 855, 857 (Ind. Ct. App. 2011), *trans. denied* (2012). "The rule of waiver in part protects the integrity of the trial court in that the trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *Id*. To the extent Appellants challenge the trial court's decision on the merits and/or on due process grounds, those arguments are waived. *See id*.; *see also McBride v. Monroe Cnty. Office of Family & Children*, 194-95 (Ind. Ct. App. 2003) (finding that appellant waived due process argument raised for first time on appeal). Nevertheless, we emphasize the importance of ensuring that parties in CHINS proceedings are given proper notice and a meaningful opportunity to be heard.

---

[8] Indiana Code Section 31-34-5-3 provides in pertinent part that after holding a detention hearing, the court "shall release the child to the child's parent, guardian, or custodian. However, the court may order the child detained if the court makes written findings of fact upon the record of probable cause to believe that the child is a child in need of services and that … detention is necessary to protect the child[.]"

## Section 3 – Appellants have waived any claim of error regarding the trial court's refusal of DCS's predisposition placement recommendations.

[10] Finally, Appellants contend that the trial court erred in refusing DCS's predisposition placement recommendations. Again, because they did not raise this issue before the trial court, it is waived. *Id.*[9] We affirm the trial court in all respects.

[11] Affirmed.

Kirsch, J., and May, J., concur.

---

[9] DCS notes that Indiana Code Section 31-34-4-7(f) specifically authorizes DCS, but not a child's parent or guardian, to appeal a trial court's refusal of DCS's predisposition placement recommendations.