

I N T H E

# Court of Appeals of Indiana

In the Matter of the Civil Commitment of K.B.,

*Appellant-Respondent*

v.

Community Fairbanks Behavioral Health,

*Appellee-Petitioner*



FILED

Nov 25 2025, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

November 25, 2025

Court of Appeals Case No.
25A-MH-925

Appeal from the Marion Superior Court

The Honorable Sarah Glasser, Magistrate

Trial Court Cause No.
49D08-2503-MH-14108

---

**Opinion by Judge Mathias**
Judges Vaidik and Pyle concur.

**Mathias, Judge.**

[1] When a trial court orders a person to be involuntarily and temporarily committed, Indiana Code section 12-26-6-8(b) (2024) requires the trial court to order the facility to which the person is committed to file a treatment plan with the court. Here, following the trial court's order that K.B. be committed to the care of Community Fairbanks Behavioral Health ("Community") for not more than ninety days,[1] Community filed a treatment plan summary, later amended, with the trial court. K.B. then sought to compel Community to file a more definite treatment plan, which the trial court denied.

[2] On appeal, K.B. raises two issues for our review, but we consider only the following question of first impression: whether the trial court erred when it denied K.B.'s request to compel Community to file a more definite treatment plan. We initially conclude that K.B.'s apparent argument that the filed treatment plan precluded his ability to challenge the forcible nature of his treatment is incorrect. K.B. had the opportunity at the hearing on the petition for his involuntary commitment to challenge his treatment plan, and he does not identify a post-order change in his treatment plan that justifies reversal of the trial court's decision. We also conclude that, while we agree with K.B. that the required treatment-plan filing must be sufficiently detailed so as to put the patient on reasonable notice as to what his or her treatment plan is, K.B. does

---

[1] We appreciate Community's recognition that this appeal is not moot. *See* Appellee's Br. at 12 n.2 (citing *J.F. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 256 N.E.3d 1260 (Ind. 2025)).

not demonstrate that Community's amended filing failed to meet that standard. We therefore conclude that the trial court did not err when it denied K.B.'s request.

## Facts and Procedural History

Since at least 2016, K.B. has been treated for various psychotic and mood disorders. K.B.'s symptoms have included paranoid delusions, auditory hallucinations, disorganized thoughts and behaviors, "ups and downs" in mood, and poor self-care. Tr. Vol. 2, pp. 17-18. Around late 2024, K.B. told his mother, who lived in Florida at the time, that he was going to stop taking medication for his mental health because he was "no longer . . . schizophrenic," and, thus, "he no longer need[ed] medication." *Id.* at 9.

In early March 2025, when K.B. was thirty-two years old, K.B.'s mother became especially "concerned" for his mental health, and she moved to Indianapolis "to be able to help" him. *Id.* K.B. moved in with his mother shortly thereafter. However, in late March, K.B. became "out of control." *Id.* He broke several televisions in his mother's home; "he was paranoid going from room to room . . . checking to see if anyone was coming in the house"; he was "arguing" and "talking to himself"; he became aggressive with his mother; and he turned on a faucet and "s[at] there letting water overflow" onto the floor. *Id.*

K.B.'s mother called law enforcement, and K.B. was transported to Community. There, he met with Dr. Syed Hasan, a psychiatrist, on four

occasions. On one of those occasions, Dr. Hasan and staff went into K.B.'s room and observed that K.B. had "urinated all over . . . the room," spread "fecal material" and "food all over the place," and soaked his own clothing in urine, "sleeping on it" all with "no regard about his own self-care." *Id.* at 18. When staff attempted to have K.B. "take [a] bath," K.B. became "very aggressive" and would not allow the staff to assist him. *Id.*

[6] On another occasion, Dr. Hasan observed K.B. "pacing the unit" alleging that another patient "has H.I.V." *Id.* K.B. was also "yelling . . . profanity" toward that other patient. *Id.* And Community officials observed K.B. "vomiting very frequently" and avoiding "line of sight instructions" while also attempting to "intoxicate himself with . . . water." *Id.*

[7] Dr. Hasan diagnosed K.B. with schizoaffective disorder, bipolar type. Dr. Hasan concluded that K.B. does not have insight into his own mental illness, which results in K.B. believing that he does not need to be treated and does not need to take prescribed medications. Dr. Hasan further concluded that K.B. would not be able to "interact appropriately" with his mother if he returned to her home. *Id.* at 19. That conclusion included K.B. not being able to engage in appropriate self-care or to avoid hostility that results from his paranoias.

[8] Community petitioned the court to order K.B.'s temporary commitment. K.B.'s mother and Dr. Hasan testified in support of the petition at an ensuing evidentiary hearing. With respect to K.B.'s treatment plan and to whether K.B.'s commitment was appropriate, Dr. Hasan specifically testified as follows:

[Counsel for Community]: In your opinion why is a commitment for a period not to exceed ninety days necessary to provide an improvement in [K.B.'s] condition?

Dr. Hasan: It's the least restrictive treatment option in my opinion for him[;] ninety days should be adequate at this time to start the medications and have his condition stabilized.

[Counsel]: And if commitment were granted, could you please tell the court your anticipated treatment plan for [K.B.]?

Dr. Hasan: . . . [W]e w[ould] like to have him on the injectable medication Invega Sustenna[. The] record does indicate that he had . . . Risperdal previously so the order tolerance has already established and[,] if we can have him on one injection[,] that would be fine . . . .

[Counsel]: How long do you anticipate the patient will remain in[-]patient?

Dr. Hasan: I think if we start the treatment, five to seven days.

* * *

Dr. Hasan: . . . [T]he patient's condition will improve quickly with these medications and then we can transition him to outpatient with active follow up.

* * *

[Counsel]: And have you considered any alternative forms of treatment?

Dr. Hasan: At this time, I don't see any alternative treatment other than the medication to stabilize his condition.

*Id.* at 23-25 (all caps removed).

[9] Following the hearing, the trial court found and concluded that K.B. was suffering from a mental illness; that he was gravely disabled; that he was in the need of custody, care, and treatment that Community would be able to provide; and that K.B.'s placement with Community was the least-restrictive yet suitable environment to meet K.B.'s needs. Accordingly, the court ordered K.B. to be committed to Community's care for a period not to exceed ninety days.

[10] In accordance with Indiana Code section 12-26-6-8(b), the trial court's order also directed Community to timely file a treatment plan with the court, and Community complied by filing a "Treatment Plan Summary." Appellant's App. Vol. 2, p. 31. Community's treatment plan summary identified K.B.'s diagnosis as schizoaffective disorder, bipolar type; identified his specific needs as including the need for improved insight; the need for medication and treatment compliance; the need for improved coping skills; and the need for education on his mental illness. The treatment plan summary further described Community's short-term and long-term goals for K.B. as follows: "Short term: decreasing psychosis, improving sleep, decreasing aggression. Long term: continue with medications, going to outpatient app[ointments], working to get stable housing, [and] addressing legal matters." *Id.* Although the treatment plan summary identified an estimated discharge date, it did not expressly identify discharge

criteria or a discharge plan, and it did not specifically repeat Dr. Hasan's testimony regarding the need for injectable medication.

[11] Two days after Community filed its treatment plan summary with the court, and eleven days after the court's order for K.B.'s temporary commitment, K.B. filed a "Petition for Consideration of Proposed Treatment Plan." *Id.* at 35. In that filing, K.B. argued that, "[b]ecause there is no specificity detailed in the filed treatment plan," he was "unable to exercise his statutory right" to have the trial court consider the appropriateness of Community's plan for his treatment and whether his placement in Community's care was the least-restrictive placement available to him. *Id.* at 36-37.

[12] The trial court reviewed K.B.'s petition and ordered Community to "respond and[/]or amend [the] treatment plan to be more specific" within seven days. *Id.* at 4. Accordingly, Community timely filed an amended treatment plan summary.[2] The amended treatment plan summary again identified K.B.'s diagnosis, his specific needs, and an estimated date for discharge. It further identified the following amended short-term and long-term goals for K.B.: "short term—start medications, monitor effectiveness, offer group programming, stabili[ze] acute mood[;] long term—engage in outp[atient] treatment, medication compliance, improve insight into illness." *Id.* at 54. Community attached to its amended treatment plan detailed information

---

[2] The Chronological Case Summary included in K.B.'s appendix does not reflect this filing. *See* Appellant's App. Vol. 2, pp. 5, 54.

regarding K.B.'s injectable medication as well as a new prescription for an oral medication. Community also attached a description of K.B.'s "after visit" instructions, including his most immediate "next steps," and follow-up appointments.[3] *Id.* at 55-61 (capitalization removed). The attached documents further explained the basis for K.B. being discharged as well as "[d]ischarge [o]rders" for K.B. to follow upon his release from his commitment. *Id.* at 57, 59-60.

[13] Although Community filed an amended treatment plan summary, Community also formally opposed K.B.'s post-order petition to consider the filed treatment plan.[4] The next day, the trial court denied K.B.'s petition with the note that Community had filed an amended treatment plan.[5]

[14] This appeal ensued.

## Discussion and Decision

[15] On appeal, K.B. argues that the trial court erred when it denied his post-order petition because Community's amended treatment plan summary was

---

[3] Community discharged K.B. prior to the expiration of his temporary commitment, but K.B. was later readmitted.

[4] The Chronological Case Summary included in K.B.'s appendix does not reflect this filing. *See* Appellant's App. Vol. 2, pp. 5, 62.

[5] The Chronological Case Summary included in K.B.'s appendix does not reflect this filing. *See* Appellant's App. Vol. 2, pp. 5, 67.

insufficiently specific.[6] In particular, K.B. argues that the purported lack of specificity in Community's amended treatment plan summary denied him the opportunity to "demonstrate [Community's] compliance with [Indiana Code section] 12-27-2-1 . . . ." Appellant's Br. at 13. Indiana Code section 12-27-2-1 states:

> Subject to [I.C. § 12-27-2-2], a patient is entitled to all of the following:
>
> (1) Mental health services or developmental training:
>
>    (A) in accordance with standards of professional practice;
>
>    (B) appropriate to the patient's needs; and
>
>    (C) designed to afford a reasonable opportunity to improve the patient's condition.
>
> (2) Humane care and protection from harm.
>
> (3) The right to practice the patient's religion.

---

[6] Community's amended treatment plan summary superseded the initial treatment plan summary. Thus, K.B.'s challenges on appeal to the sufficiency of the initial treatment plan summary are moot, and we do not consider them. Further, insofar as K.B. suggests that the trial court's order for his commitment should be reversed because the amended treatment plan summary is insufficient to demonstrate that his placement in Community's care was appropriate, K.B.'s argument is not supported by cogent reasoning. *See* Ind. Appellate Rule 46(A)(8)(a). The trial court's finding that K.B.'s placement was appropriate occurred after the fact-finding hearing and was premised on the record made at that hearing; the subsequently filed amended treatment plan summary had no bearing on that determination.

> (4) Contact and consultation with legal counsel and private practitioners of the patient's choice at the patient's expense.

And Indiana Code section 12-27-2-2 states:

> (a) The rights set forth in [I.C. 12-27-2-1] are subject to the limitation that there may be certain conditions for which there is no known effective treatment or developmental training.

> (b) A service provider is not required to afford mental health services or developmental training where treatment would not be likely to produce a significant improvement.

[16] K.B. also asserts that the purported lack of specificity in the amended treatment plan summary denied him his rights under Indiana Code section 12-27-5-2. That statute provides:

> (a) An involuntary patient[7] who wants to refuse to submit to treatment or a habilitation program may petition the committing court or hearing officer for consideration of the treatment or program.

---

[7] Given the statute's broad reference to any "involuntary" patient, we reject Community's argument that the statute does not apply to patients who are involuntarily committed on a temporary basis. Further, Indiana Code section 12-27-1-2 expressly excludes individuals "receiving mental health services or developmental training under the [D]epartment of [C]orrection" from article 12-27; there is no similar provision for patients who have been involuntarily committed on a temporary basis. Indeed, the relevant definition of a "service provider" under title 12 includes "[a]ny . . . hospital . . . if the individual receiving mental health services or developmental training was admitted without the individual's consent." I.C. § 12-7-2-175(7); *see also* 12-27-5-2(b) (noting that the "service provider" may proceed with forcible treatment in the absence of a petition for judicial review). Community does not suggest in this appeal that it is not captured by that definition.

> (b) In the absence of a petition made under subsection (a), the service provider may proceed with the proposed treatment or habilitation program.

I.C. § 12-27-5-2.

[17] Our Court has previously recognized that Indiana Code sections 12-27-2-1 and 12-27-5-2 operate together to "provide avenues by which a committed patient may place the appropriateness *of a particular course of treatment or habilitation program* before a court for judicial review." *In re T.S.*, 959 N.E.2d 855, 857 (Ind. Ct. App. 2011) (emphasis added), *trans. denied*. In particular, those statutes enable judicial review of "forcible" treatment or medication; that is, treatment or medication that would be provided against the will of the involuntarily committed patient. *Id.* at 958-59.

[18] Thus, K.B.'s argument appears to be that, in the absence of a sufficiently specific treatment-plan filing, he is unable to protect himself against the possibility of unwanted, forcible treatment. But K.B. is incorrect. Dr. Hasan expressly testified at the hearing on Community's petition to order K.B.'s involuntary commitment that K.B.'s treatment plan would include injectable medication. A treatment plan of injectable medication in support of a petition for involuntary commitment is straightforwardly a forcible treatment plan. K.B. had the opportunity at that hearing to challenge the treatment plan, and, having entered the order for K.B.'s temporary commitment, the court necessarily approved the treatment plan as appropriate to break K.B.'s cycle of psychosis notwithstanding his objections. In other words, K.B. was specifically informed

of the forcible nature of the proposed treatment plan at the hearing on the petition for his involuntary commitment, and the court approved the use of that force as necessary.

[19] A person who has been involuntarily committed by court order and then seeks judicial review of forcible treatment under Indiana Code sections 12-27-2-1 and 12-27-5-2 must show that there has been some *change* in the treatment plan beyond the treating medical professional's testimony that resulted in the order of temporary commitment. Further, that change need only be "proposed" by the service provider under the statutes; section 12-27-5-2 does not condition the right to judicial review on whether a treatment plan showing the change has been filed with the trial court. *See* I.C. § 12-27-5-2(b). Nonetheless, here, the amended treatment plan summary reflected a change in K.B.'s treatment plan by adding an oral prescription. K.B. does not argue on appeal that the trial court's denial of his post-order petition for consideration was erroneous based on that addition. And the addition of an oral medication to a treatment plan is not so substantive that it materially affects the rights of an involuntarily committed patient. Accordingly, we cannot say that the trial court's denial of K.B.'s petition for consideration following the order of his temporary commitment was erroneous.

[20] Still, K.B. also asserts that the amended treatment plan summary "was so vague it prevented him from asking . . . whether his treatment was: in accordance with standards of professional practice; was appropriate for his circumstances; was designed to afford a reasonable opportunity to improve his condition; and was

the least restrictive alternative." Appellant's Br. at 15. Likewise, K.B. contends that the amended treatment plan summary did not inform him of "what benchmarks he must achieve before obtaining out-patient status." *Id.* K.B. suggests that those alleged failures denied him his due-process rights.

[21] Although we agree with K.B.'s general proposition that the required treatment-plan filing must be sufficiently detailed so as to put a patient on reasonable notice as to what his or her treatment plan is, K.B.'s arguments here do not demonstrate that Community failed to meet that standard. Indeed, a facility's filing of a patient's treatment plan following an order of temporary commitment is not the time for any of K.B.'s proffered questions. The treatment plan is a statutorily required filing *that comes after* the court's entry of an order of temporary commitment, and the order of an involuntary temporary commitment, of course, comes after an evidentiary hearing before the court. *See* I.C. §§ 12-26-6-4, -8(b). Questions regarding a facility's compliance with professional standards, the appropriateness of the placement that is sought, and whether the placement is the least-restrictive option available have, as a matter of law, already been adjudicated by the time the treatment plan is filed. *See* I.C. §§ 12-26-2-5(e), -6-8(b). Accordingly, K.B.'s arguments here are also not persuasive.

[22] For all of these reasons, K.B.'s challenge to the purported sufficiency of Community's amended treatment plan fails, and we affirm the trial court's order for his temporary commitment.

Affirmed.

Vaidik, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jenny R. Buchheit
Abby V. DeMare
Rani B. Amani
Ice Miller LLP
Indianapolis, Indiana