## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 16 2016, 5:59 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Erik H. Carter | Donna Jameson |
| Carter Legal Services LLC | Greenwood, Indiana |
| Noblesville, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christina Feiock, | February 16, 2016 |
| *Appellant-Respondent,* | Court of Appeals Case No. 49A02-1506-JP-611 |
| v. | Appeal from the Marion Superior Court |
| Korey Ricciardi, | The Honorable David Dreyer, Special Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 49D10-1003-JP-10744 |

**Pyle, Judge.**

## Statement of the Case

[1]     Christina Feiock ("Mother") appeals the trial court's order granting Korey

Ricciardi's ("Father") motion to modify physical and legal custody of the

couple's eight-year-old son. Here, when the son was three years old, Father established paternity of him and was awarded parenting time. Mother, however, did not comply with the trial court's orders regarding parenting time. She was later found to be in contempt on more than one occasion; nevertheless, she continued to deny parenting time to Father. During the custody modification hearing underlying this appeal, the trial court offered a modified cross-examination procedure to Mother, who appeared pro se. She did not object to the suggested procedure and engaged in a process where she discussed and refined her cross-examination questions with the trial court before they were posed to Father.

[2] On appeal, Mother raises multiple arguments, which we have consolidated and restate as the following: (1) the trial court violated her right to due process during the custody modification hearing by denying her right to cross-examine Father; and (2) the trial court abused its discretion by granting Father's petition to modify physical and legal custody. Concluding that Mother waived her due process argument by failing to object to the trial court's suggested cross-examination procedure and that Mother's arguments challenging the trial order modifying custody are nothing more than a request to reweigh the evidence and reassess the credibility of witnesses, we affirm the trial court's order.

[3] We affirm.

# Issues

1. Whether the trial court violated Mother's right to due process during the custody modification hearing.

2.  Whether the trial court abused its discretion by granting Father's petition to modify physical and legal custody.

## Facts

Mother and Father are the parents of C.R., who was born in October 2006. Mother and Father were not married but lived together after C.R.'s birth until 2010.

In March 2010, Father filed a petition to establish paternity of C.R. Thereafter, on June 16, 2010, Father and Mother filed an "Agreed Entry and Order Establishing Paternity" ("Agreed Order"), which the trial court accepted. (App. 27). In this Agreed Order, the parties agreed that Mother would have sole physical custody of C.R. and that they would share joint legal custody. They also agreed that Father would have parenting time pursuant to the Indiana Parenting Time Guidelines, with the initial four months of Father's overnight parenting time supervised by paternal grandparents followed by unsupervised overnight parenting time.

Approximately six months later, in December 2010, Father filed a petition for a contempt citation and rule to show cause ("petition for contempt"), seeking for the trial court to find Mother in contempt for failing to let Father have his parenting time.

On February 4, 2011, Father filed a petition to modify custody. Father also filed another petition for contempt regarding Mother's denial of his parenting time, as well as, a petition for a Domestic Relations Counseling Bureau

("DRCB") investigation and report. In April 2011, the DRCB met with the parents and then filed a report with the trial court in May 2011.[1]

[8] On September 14, 2011, the trial court issued an order, finding that there had not been a substantial change in one of the statutory custody modification factors and denying Father's petition to modify custody. The trial court, however, found Mother in contempt for failing to comply with the trial court's June 2010 Agreed Order regarding Father's parenting time. The trial court ruled that sanctions against Mother were to be held under advisement pending her compliance with the trial court's current order. Additionally, the trial court ruled that Father was entitled to make up the missed parenting time, and it modified Father's parenting time so that he would "have parenting time in excess of the Indiana Parenting Time Guidelines." (App. 34). Finally, the trial court ordered Mother and Father to complete parenting classes and to refrain from making any "disparaging remarks regarding the other parent or otherwise show disrespect for the other [p]arent in the presence of [C.R.]." (App. 35).

[9] A few weeks later, on September, 29, 2011, the trial court held a hearing and determined that Father was entitled to fourteen overnight parenting time visits. The trial court again ruled that sanctions against Mother were to be held under advisement pending her compliance with the trial court's current order.

---

[1] This report is not included in the record on appeal.

Additionally, the trial court directed Father to ensure that C.R. was given his medication as directed by the child's doctor.[2]

[10] One month later, on October 28, 2011, Father filed an emergency petition for contempt and a request for sanctions. On November 17, 2011, the trial court held a hearing on Father's contempt petition. On November 22, 2011, the trial court issued an order, finding Mother "in contempt of the Court's orders on parenting time as entered on June 16, 2010, and September 14, 2011" for denying Father his parenting time on October 21-24, 2011. (Appellee's App. 2). The trial court ruled that Father was entitled to make up the denied parenting time. The trial court also determined that "[a]s sanctions against Mother for her contempt," she was required to pay $600.00 of Father's attorney fees. (Appellee's App. 3). Additionally, the trial court ordered Mother to consult with a counselor to assist her with scheduling parenting time.

[11] On August 16, 2012, Father filed a second petition to modify custody, seeking to modify both legal and physical custody. It is this petition that is the subject of this appeal. In his petition, Father alternatively sought to modify his parenting time to obtain additional time. Additionally, Father filed a motion for a change of judge, and the case was transferred to the Honorable David Dreyer in September 2012.

---

[2] C.R. has allergies and asthma.

[12] On November 1, 2012, Mother filed a pro se petition for contempt, alleging that Father had not completed his parenting classes and had failed to give C.R. his prescribed medication. That same day, Mother also filed a pro se "emergency" petition to modify custody. (App. 39). In her petition, Mother asserted that she was concerned for C.R.'s health and well-being while with Father, and she sought to have his overnight parenting time temporarily withheld.

[13] On November 5, 2012, Father filed a petition for contempt and a motion for a DRCB evaluation. The trial court approved the evaluation motion and ordered the parties to participate in the DRCB evaluation.

[14] On December 14, 2012, Father filed another petition for contempt, asserting that Mother had refused to allow Father to have his holiday parenting time.

[15] On January 28, 2013, Mother filed another pro se "emergency" petition to modify custody. (App. 43). Mother again asserted that she was concerned for C.R.'s health and well-being while with Father, and she sought to have Father's overnight parenting time temporarily withheld.

[16] In February 2013, Diane Elliott ("Elliott") of the DRCB met with the parents for an evaluation. She filed an updated DRCB report with the trial court in March 2013.[3]

---

[3] This report is not included in the record on appeal.

[17] On March 5, 2013, Father filed an additional petition for contempt, asserting that Mother had defied the trial court's orders regarding parenting time by refusing to allow Father to have his parenting time and refusing to allow him to make up his missed parenting time.

[18] On April 22, 2013, Father sought an expedited hearing on his contempt petitions because Mother was still denying parenting time to him. The trial court then held a hearing on May 23, 2013. On June 10, 2013, the trial court issued an order, finding Mother "in contempt for unjustified and unexplained denial of parenting time on repeated occasions, totaling at least 38 overnight visits and 58 evening hours." (App. 50). The trial court also sanctioned Mother by ordering her to spend ten days in jail but held that commitment in abeyance pending the next hearing on October 4, 2013.

[19] Thereafter, on June 19, 2013, Mother filed a motion for the appointment of a guardian ad litem, which the trial court denied.

[20] On August 8, 2013, Father filed yet another petition for contempt, asserting that Mother had continued to defy the trial court's orders regarding parenting time. Father asserted that Mother had interfered with his parenting time, including "[m]aking unsubstantiated allegations of neglect to CPS[.]" (App. 61). Father also requested that the trial court grant him sole legal and physical custody because "Mother's interference with Father's parenting time [wa]s a substantial change in custody as it interfere[d] and [wa]s a detriment to the Father-child

relationship[.]" (App. 61) (citing *In re Paternity of J.T.*, 988 N.E.2d 398 (Ind. Ct. App. 2013)).

[21] On October 4, 2013, the trial court held a hearing and issued an order on the pending contempt petitions and on Mother's compliance with the trial court's June 10, 2013 order regarding parenting time. The trial court determined that Father was entitled to make up parenting time for two overnight visits. The trial court also took Father's custody modification request and any contempt sanctions under advisement. Additionally, the trial court, by separate order, ordered the parties to go back to DRCB on December 1, 2013, so that the DRCB report on custody and parenting time could be updated. Father attended the scheduled DRCB evaluation, but Mother did not.

[22] On December 18, 2013, Mother, by counsel, filed a petition for contempt, alleging that Father had failed to return C.R.'s medication to Mother, which she argued was required by the Indiana Parenting Time Guidelines.

[23] On January 23, 2014, Father filed another petition for contempt, alleging that Mother had failed to appear at the scheduled DRCB evaluation update. Father also alleged that Mother had failed to keep him informed of C.R.'s medical appointments and that she had tried to prevent Father from attending these appointments and obtaining medication at the pharmacy for C.R.

[24] That same day, Father filed, pursuant to Trial Rule 12(B)(6), a motion to dismiss Mother's contempt petition. Father argued that Mother's petition failed

to state a claim upon which relief could be granted because he had not willfully disobeyed a court order or the Parenting Time Guidelines.

[25] On February 7, 2014, the trial court held a hearing on the parties' contempt petitions. The trial court directed the parties to "take all steps necessary to complete the DRCB evaluation" and to "strictly follow the Indiana Parenting Time Guidelines regarding all necessary medications" for C.R. (App. 74).

[26] In March 2014, Mother filed a report with the police department and alleged that Father had raped her when she conceived C.R. in 2006.

[27] On May 30, 2014, Father filed a petition for contempt, alleging that Mother had once again failed to comply with the trial court's orders regarding parenting time. Father also alleged that Mother had failed to include Father in parenting decisions and that Mother was going to advance C.R. into the next grade level despite a recommendation from the school to hold him back in first grade because of his poor reading skills.

[28] Shortly thereafter, on June 9, 2014, Mother filed, in Hendricks County, a petition for a protective order against Father. The Hendricks Superior Court granted a temporary ex parte order of protection. Father then sought to have this cause transferred to the parties' pending Marion County paternity cause, and he filed a petition for a protective order against Mother.

[29] On August 7, 2014, Father filed an additional petition for contempt. Father alleged that, after Mother had obtained her protective order, he was required to

have his mother ("Paternal Grandmother") pick up C.R. when it was Father's parenting time and that Mother had interfered with Father's parenting time when she failed to comply with the drop off schedule for Father's visits.

[30] On August 11, 2014, after Mother's protective order cause had been transferred to Marion County, the trial court held a hearing and determined that the "[e]vidence was not sufficient to warrant the entry of a protective [order] under Indiana law." (App. 117). The trial court terminated Mother's prior temporary protective order.

[31] In August 2014, DRCB submitted a second report to the trial court.[4] Thereafter, Mother filed a motion for a second custody evaluation. Father then filed an objection to Mother's custody evaluation motion. Father asserted that Mother was "unhappy" with the DRCB report because it recommended that he be granted sole custody, and he argued that Mother's motion was nothing more than an attempt to "'shop around' for a custody evaluation that would benefit her" and an attempt to delay the proceedings. (Appellee's App. 9).

[32] On March 4, and March 18, 2015, Father filed two more petitions for contempt. In these petitions, Father alleged that Mother continued to deny and impede his parenting time and failed to follow the trial court's orders.

---

[4] This DRCB report is not included in the record on appeal.

[33]     On March 20, 2015, the trial court held a hearing, during which both parties were represented by counsel. Father presented testimony from C.R.'s elementary school principal, Ray Gyori-Helmuth ("Principal Helmuth"), who testified that C.R. was academically behind his second grade class and required the highest level of academic intervention. Principal Helmuth testified that he had previously recommended that C.R. repeat the first grade and that Father had agreed, but Mother had disagreed. He testified that Mother had said that she would work with C.R. during the summer and catch him up to his current grade level, but C.R. returned to school for second grade and continued to have academic problems. Principal Helmuth testified that he had recommended that C.R. be held back and repeat the second grade at the end of his second grade year but that Mother had again disagreed and wanted to move C.R. to the third grade. The principal also testified regarding his concerns about C.R. continuing to fall behind academically and the negative effect it would have on his confidence level. The hearing ended following Principal Helmuth's testimony, and the trial court instructed the parties to discuss mediation and attempt to negotiate any pending motions.

[34]     That evening after the hearing, Mother sent an email to Principal Helmuth, commenting on his testimony that day and debating the need for C.R. to be held back in his current grade. Mother also threatened to report the principal to the school board because he had testified at the hearing.

[35]     On April 13, 2015, Mother, no longer represented by counsel, filed a pro se petition for contempt. In her motion, Mother alleged that she had experienced

multiple difficulties with Father during parenting time visits, including Father's failure to return C.R.'s clothes in a clean condition, failure to administer medication to C.R., and failure to allow C.R. to talk to Mother during his visits with Father. That same day, Mother filed a motion for a change of judge, which the trial court denied.

[36] On April 30 and May 1, 2015, the trial court held hearings on Father's petition to modify physical and legal custody and on the pending contempt petitions. For these two days of hearings, Mother appeared pro se.[5]

[37] On the first hearing date, Elliott of the DRCB testified that she had filed an updated DRCB report in 2014. Elliott testified that, when she met with Mother in March 2013 for the DRCB assessment, Mother had "viewed [Father] as need[ing] to play a minimal role in [C.R.'s] life" and had believed that Father should have no rights to C.R. and should have supervised parenting time. (Tr. 32). Elliott recommended that Father be given sole legal and physical custody of C.R. and reasoned, in part, that:

> There was a pattern over at least a couple of years about . . . [Mother's] resistance to includ[e] [F]ather with joint decisions as well as . . . constant disputes and denials of parenting time, her overall negative view of him, instability, [and] some concerns she wasn't able to properly meet [C.R.'s] need for counseling and education.

---

[5] At the time of the hearing, Father had remarried and had another child, and Mother also had another child.

(Tr. 51).

[38] Following Elliott's direct testimony, the trial court offered to slightly adjust the procedure for cross-examination in an effort to assist Mother, who was representing herself at the hearing. The trial court had the following discussion with Mother:

> THE COURT: As I said [Mother] you can, what I might suggest is that you tell me the question or questions you want, that might help, might help facilitate you know cause I can [or] might be able to state them or restate them, or explain the[m] better is that okay. I don't want to get in your way but I sometimes I find when people don't have attorneys that might be helpful, do you want to try it that way?
>
> [Mother]: Yeah we can.
>
> THE COURT: Okay, so what's the . . . do you have a list of questions.
>
> [Mother]: Yeah, yeah.
>
> THE COURT: Okay and you might be able to do it just as well as anybody else I'm not saying you can't[.] [D]o you want to start asking the questions?
>
> [Mother]: Yeah I can.
>
> THE COURT: Okay why don't you try and I'll see how it goes.

[39] (Tr. 58-59). Various times during Mother's cross-examination of Elliott, the trial court assisted Mother by rephrasing a question to help her clarify her point.

[40] Thereafter, Father testified and recounted the difficulties that he had experienced with Mother, including cooperation with parenting time and communication with C.R. Father testified that, in the past, he had been hesitant to call C.R. when he was with Mother because Mother had entered Father's contact information in her cell phone under the name of "Korey Douche" and that he did not want C.R. to see that name when he called. (Tr. 124).[6] Father testified that Mother had interfered with his parenting time and that, on one occasion, Mother had sent the police to remove C.R. from Father's home because she refused to let Father have some of his make-up parenting time. Father testified that, other times when he was having parenting time with C.R., Mother had called the police to his house to do a "welfare check" on C.R. (Tr. 116). Additionally, he testified that Mother had not informed him of doctor and counseling appointments for C.R., who had been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). Furthermore, Father testified that he agreed with Principal Helmuth's recommendation to retain C.R. in second grade and did not agree with Mother's decision to advance C.R. to the next grade level.

[41] Once Father completed his direct testimony, it was the end of the hearing day. At that point, the trial court indicated it had fifteen minutes left for the day and that it wanted to decide how to proceed for the remaining time. After Father's

---

[6] Mother's Exhibit F, which are screen shots of a text conversation between Mother and Father that Mother took from her cell phone, reveal that she had entered Father's name as "Korey AKA Douche!". (Respondent's Ex. F).

counsel indicated that he had planned for Mother to be his last witness, the trial court suggested the following procedure to Father and Mother:

> THE COURT: Well here's what I suggest is that we agree that mom can, I don't know if you agree with this or not[,] what I was going to suggest is instead of trying to cross examine or ask questions is that you would, we would all agree that mom can testify both in opposition to what's been said and also with your own evidence and then you'd be able to ask her some questions I think is what I'm . . . .
>
> [Father's Counsel]: I have no problem.
>
> THE COURT: I'm not trying to keep anything out or miss anything[.] I'm just trying to make it a little more streamline[d] time wise[.] [D]oes that make sense to you [Mother]?
>
> [Mother]: Kind of I just know there's um . . . I know there are quite a few things that are very I mean like . . .
>
> THE COURT: I mean we could start and come back[.] [W]e can always do that or it wouldn't be a long time from now that we could reschedule and come back again to finish with this witness, and maybe with only 15 minutes maybe that's what we're bound to do anyway I don't know. So go ahead[,] I'm sorry[,] I interrupted you go ahead.

[42]  (Tr. 133-34). Mother then began to offer some testimony to rebut Father's testimony, and she offered some exhibits. At the end of the fifteen minutes, the trial court interrupted Mother's testimony so it could continue the hearing to the following day.

[43]  The next day, at the beginning of the hearing, the trial court stated:

So we're on the record again and we are resuming the hearing we started yesterday as you know including contempt and modification, and we had . . . evidence from [Father] . . . [two] witnesses and we had turned to [Mother]. And what we were doing was you remember was [Mother] was giving her testimony, giving [her] facts [her] evidence and that's partly in response to [Father's] evidence and partly as part of [her] case that [she's] presenting okay. So and I think we all agree with that[.] [T]hat's how we're doing it and then . . . [Father's] attorney will have . . . an opportunity to question [Mother] . . . .

(Tr. 151). After Mother confirmed that she wanted to present some additional witnesses after she testified, the trial court and Mother had the following discussion:

> THE COURT: Okay. Why don't we finish with you and see how we go from there okay. Now you remember how, I don't know what question you were or what issue or statement you were making when we stopped yesterday, but what I want to do is just to start [and for] you [to] continue to complete your testimony . . . statements and all that. You ready to do that?
>
> [Mother]: Yes.
>
> THE COURT: Okay go ahead.
>
> [Mother]: Now is it okay to ask directly for the responses?
>
> THE COURT: You mean to ask [Father]?
>
> [Mother]: Yes.
>
> THE COURT: Well you have a right to do that um . . . I guess I can't say no[.] I mean like I say when people don't have attorney's [sic] sometimes it's easier to do it this way but I'm not going to say you can't do that, so if you have questions, but I am

going to reserve you know if I think a question can [be] expressed a better way[,] I might intervene and say that's the question[.] [O]kay, this is done to help you and help the record[.] [S]o, so do you have a question or questions . . . .

(Tr. 152-53). Mother then proceeded with a combination of testifying and discussing her questions for Father with the trial court. Once the trial court confirmed what Mother wanted to ask and helped her to refine the questions, the trial court directed Father to respond to Mother's questions. The trial court ensured that Mother posed all of the questions that she had for Father. After Mother presented Father's parents as witnesses, the trial court ended the hearing and took the matter under advisement.

Shortly thereafter, on May 18, 2015, the trial court issued an order granting Father's petition to modify legal and physical custody. In its order, the trial court made the following relevant findings:

> 1. A substantial change in circumstances has occurred and it is in the best interest of the minor child that legal and physical custody be modified in that:
>
>> a. The minor child . . . is four years older since the last hearing on custody.
>>
>> b. [Mother] intentionally interferes in the relationship between [Father] and minor child in that:
>>
>>> i. [Mother] continues to deny [Father] parenting time despite previous court orders finding her in contempt [for] denying parenting time and previous

sanctions by the court have not proven effective.

ii. [Mother] makes unilateral decisions as to major issues regarding the minor child despite the parties sharing joint legal custody.

iii. [Mother] speaks disparagingly of [Father] to third parties and to [Father].

iv. [Mother] refused to inform [Father] as to the minor child's healthcare appointments, extra-curricular schedules, and school events.

v. [Mother] made repetitive calls to Department of Family Services alleging that [Father] was abusive to or neglected the minor child, all reports made by [Mother] were unsubstantiated by Department of Family Services.

vi. [Mother] called the police to [Father's] residence on numerous occasions, interfering with [Father's] parenting time as the minor child was removed from [Father's] care despite it being [Father's] parenting time.

c. [Mother] does not support a parent-child relationship between [Father] and the minor child and believes [Father's] parental rights should be terminated.

d. The minor child is performing below grade level and despite recommendations by educational

professionals, [Mother] intends to advance the minor child to the next grade level over [Father's] objection.

> i. [Mother] lashed out at the child's principal for testifying at the March 20, 2015 hearing and threatened to report him to the school board for testifying.

e. Diane Elliott with the [DRCB] expressed the need of [Mother] to have a mental health evaluation and obtaining the necessary counseling.

f. [Mother] made allegations that [Father] [had] sexually assaulted her to IMPD in 2014, claiming the assault took place[] in 2006.

g. [Mother] continues to make allegations to the child's counselor, the school, and the court that [Father] is physically abusive towards the child and her, none of [Mother's] claims were supported by the evidence.

(App. 23-25). The trial court granted Father's petition to modify custody, ordering that Father would "immediately have sole legal and physical custody" of C.R. (App. 25). Additionally, the trial court found Mother "in contempt for denying parenting time as alleged in [Father's] August 2014 and March 2015 motions." (App. 26). Mother now appeals.

## Decision

[47] Mother raises multiple arguments, but we consolidate her arguments and restate them as the following two: (1) the trial court violated due process rights by denying her the right to cross-examine Father during the custody

modification hearing; and (2) the trial court abused its discretion by modifying custody and granting physical and legal custody of C.R. to Father. [7]

[48] Before we address Mother's arguments, we note that where, as here, neither party filed a written request for findings and conclusions, the trial court's sua sponte findings are controlling only as to issues they cover. *In re Adoption I.B.*, 32 N.E.3d 1164, 1169 (Ind. 2015) (citing *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)). "[A] general judgment will control as to the issues upon which there are no findings." *Yanoff*, 688 N.E.2d at 1262. Under the general judgment standard, we will affirm on any legal theory supported by the evidence. *In re Adoption I.B.*, 32 N.E.3d at 1169.

## 1. Due Process

[49] Mother contends that the trial court violated her due process rights under the Fourteenth Amendment to the United States Constitution[8] by denying her the right to cross-examine Father during the custody modification hearing.

[50] Mother, however, has waived appellate review of her challenge to the trial court's cross-examination procedure by failing to object during the hearing. "It is well established . . . that a party on appeal may waive a constitutional claim."

---

[7] Mother sets forth two additional separate issues, which are essentially arguments relating to her challenge to the modification of custody. Thus, we will address them in context of her custody modification argument and will not separately address them as individual issues.

[8] The Fourteenth Amendment provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. XIV.

*See McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003). *See also Hite v. Vanderburgh Cnty. Office of Family & Children,* 845 N.E.2d 175, 180 (Ind. Ct. App. 2006) (explaining that constitutional claims, including due process claims, may be waived when raised for the first time on appeal). An "'appellant cannot sit idly by without objecting, await the outcome of trial, and thereafter raise an issue for the first time on appeal.'" *Bogner v. Bogner*, 29 N.E.3d 733, 740 (Ind. 2015) (quoting *Trout v. Trout*, 638 N.E.2d 1306, 1307 (Ind. Ct. App. 1994), *trans. denied*). *See also Troxel v. Troxel,* 737 N.E.2d 745, 752 (Ind. 2000) ("A party may not raise an issue for the first time . . . on appeal."), *reh'g denied*. "The rule of waiver in part protects the integrity of the trial court in that the trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *Commitment of T.S. v. Logansport State Hosp.*, 959 N.E.2d 855, 857 (Ind. Ct. App. 2011), *trans. denied.*

[51]     Here, the trial court offered Mother a modified procedure for conducting cross-examination. It is clear from the record that the trial court's suggested procedure was merely a way of expediting the hearing and assisting Mother, who appeared pro se at the hearing. *See* Ind. Trial Rule 43(D) (providing that the scope, extent, method, and manner of cross-examination is within the control and discretion of the trial court); *Lovko v. Lovko*, 179 Ind. App. 1, 12, 384 N.E.2d 166, 173 (1978) ("The scope of cross-examination of a witness is broad and its limits lie within the discretion of the trial court."). Mother neither objected to the trial court's procedure nor argued that it would violate her due process rights. Accordingly, she has waived appellate review of her due process

claim.[9] *See, e.g.*, *McBride*, 798 N.E.2d at 194-95 (holding that a mother had waived appellate review of her due process claim when she raised it for the first time on appeal); *Trout*, 638 N.E.2d at 1307-08 (holding that a husband waived any challenge to the trial court's procedure—which included an expedited proceeding with summarized testimony—when the husband failed to object to the format of the proceeding during the hearing). *See also State v. Friedel*, 714 N.E.2d 1231, 1236 (Ind. Ct. App. 1999) (hold that the State waived challenge to the defendant's standing by failing to present claim to the trial court).

## 2. Custody Modification

[52] Next, Mother argues that the trial court abused its discretion by granting Father's petition to modify custody. More specifically, Mother contends that the trial court erroneously awarded sole physical and legal custody of C.R. to Father.

[53] Turning first to Mother's challenge to the trial court's modification of physical custody of C.R., we note that "[w]e review custody modifications for abuse of discretion, with a 'preference for granting latitude and deference to our trial judges in family law matters.'" *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). Our

---

[9] Mother also suggests that the trial court violated her right to due process because it did not give her the opportunity to object to Father's exhibits. She has, however, also waived this argument by failing to object at trial. See *Bogner*, 29 N.E.3d at 740.

supreme court explained the reason for this deference to the trial court as follows:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Id.* (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965) (footnote omitted in original quotation)). *See also Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) ("Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time."). Accordingly, "'[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Kirk*, 770 N.E.2d at 307 (quoting *Brickley*, 210 N.E.2d at 852 (citations omitted from original quotation)). We will neither reweigh the evidence nor reassess the credibility of witnesses, and we will view the evidence most favorably to the judgment. *Best*, 941 N.E.2d at 502. "[W]e consider only the evidence and reasonable inferences drawn therefrom which support the verdict." *Hanson v. Spolnik*, 685 N.E.2d 71, 77 (Ind. Ct. App. 1997), *trans. denied*.

Following the establishment of paternity, "[t]he [trial] court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under [INDIANA CODE § 31-14-13-2] . . . . " I.C. § 31-14-13-6.[10] The factors set forth in INDIANA CODE § 31-14-13-2 include the following:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to home, school, and community.

---

[10] Mother cites to INDIANA CODE §§ 31-17-2-21 and 31-17-2-8, which are applicable to determining the modification of custody in a dissolution proceeding. When determining the modification of custody in a paternity proceeding, as we have in this appeal, INDIANA CODE §§ 31-14-13-6 and 31-14-13-2 are applicable. Nevertheless, the paternity and dissolution statutes contain nearly identical language and now involve the same standard of review. *See Joe v. Lebow*, 670 N.E.2d 9, 16-20 (Ind. Ct. App. 1996) (discussing the history of the dissolution and paternity custody modification statutes).

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

[55] Mother does not dispute the trial court's determination that modification was in C.R.'s best interest. Instead, Mother raises a variety of arguments challenging whether there was a substantial change in one of the statutory factors.

[56] Mother's first challenge to the modification of physical custody is focused on her assertion that the trial court failed to find that there was a substantial change in one of the statutory factors relating to custody modification.

[57] We, however, find no merit in Mother's argument. Our Court has explained that "all that is required to support [a] modification of custody . . . is a finding that a change would be in the child's best interests, a consideration of the [relevant statutory] factors . . . , and a finding that there has been a substantial change in one of those factors." *Nienaber v. Marriage of Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2003) (discussing custody modification under I.C. §§ 31-17-2-21 and 31-17-2-8 in a dissolution proceeding). When interpreting the custody modification statute in a dissolution hearing, our Court explained that the statute does not require the trial court to specify which factor or factors has substantially changed. *Kanach v. Rogers*, 742 N.E.2d 987, 989 (Ind. Ct. App. 2001). Instead, the trial court "must 'consider' the statutory factors and find

there has been a substantial change." *Id.* When interpreting the statute in this manner, we reasoned that "[h]ad our legislature intended to require trial courts to enumerate specifically in their orders those individual factors, it presumably would have articulated that requirement[,]" and we "decline[d] to engraft onto the statute a requirement the legislature did not articulate." *Id.*

[58] Here, after finding that a "substantial change in circumstances ha[d] occurred" and that "it [wa]s in the best interest of the minor child that legal and physical custody be modified[,]" the trial court made various findings that related to the statutory factors relating to custody modification. These findings addressed the child's age, Mother's actions that interfered with Father's relationship with the child, the child's failure to perform in school at his grade level, and other findings that related to the mental health of the involved parties.

[59] Mother also contends that the modification of physical custody was erroneous because "no evidence was presented of any effect on [C.R.]." (Mother's Br. 26). Mother's argument suggests that there needed to be a quantitative showing of a demonstrative negative effect on the child and a finding thereof by the trial court before it could find that a substantial change had occurred. Mother cites to *Jarrell v. Jarrell* for the proposition that "[t]he effect on the child is what

renders a change substantial or inconsequential." (Mother's Br. 26) (quoting *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1193 (Ind. Ct. App. 2014), *trans. denied*).[11]

[60]     We find Mother's argument misplaced. While any negative effect on a child may be relevant to a determination of whether modification was in a child's best interest, there is no requirement that a party present or the trial court make a specific finding regarding the effect on the child in order to modify custody. *See Nienaber*, 787 N.E.2d at 456. Moreover, the *Jarrell* case discussed the "effect" on the child in relation to a question of whether an out-of-state move by a parent would be considered a substantial change. *See Jarrell*, 5 N.E.3d at 1193.[12] Nevertheless, a review of the record reveals that there was evidence relating to the effect of Mother's actions on C.R., including his academic difficulties at school and her refusal to follow the principal's and Father's recommendation that C.R. be retained in his current grade. Additionally, the DRCB evaluator testified that C.R. had been suspended three times in March and April 2013, which she believed was around the time that Mother had denied parenting time between C.R. and Father.

---

[11] Another case cited by Mother to support this argument, *Steele-Giri v. Steele*, 40 N.E.3d 513, 521 (Ind. Ct. App.) *trans. granted*, 41 N.E.3d 690 (Ind. 2015), has had transfer granted by our supreme court after Mother filed her brief; thus, this opinion has now been vacated. *See* Ind. App. R. 58(A).

[12] Furthermore, the line of cases upon which *Jarrell* was based (and the focus on the "effect" on the child) were decided in relation to a pre-1994 statute—applicable in dissolution hearings—and a prior statutory requirement that a party must show that an existing custody order was "unreasonable[,]" which is a requirement that did not exist in the former paternity custody modification statute and that no longer exists in the current dissolution custody modification statute. *See Joe v*, 670 N.E.2d at 16-17.

[61] Additionally, Mother argues that the trial court did not have the authority to modify custody based solely on her repeated violations of parenting time orders. In regard to this argument, Mother contends that her denials of parenting time were justified because she was able to change the parenting time schedule as the custodial parent, and she asserts that she offered make-up time for the missed time. We agree that "[g]enerally, [a] lack of cooperation or isolated acts of misconduct by a custodial parent cannot serve as a basis for the modification of child custody." *Hanson*, 685 N.E.2d at 78. However, from a review of the trial court's order and the record on appeal, it is clear that the trial court's modification of physical custody was not based solely on Mother's violations of its parenting time orders. Indeed, Mother's argument and attempted justification for her denial of parenting time is nothing more than a request to reweigh the evidence and reassess the credibility of witnesses, which we will not do. *See Best*, 941 N.E.2d at 502.

[62] A review of the appellate record reveals that there is ample evidence to support the trial court's finding that there was a substantial change in one of the statutory factors that justified a modification of custody. Mother has not shown that the trial court's conclusions that modification of custody was in the best interest of the child and that there was a substantial change in the relevant factors had occurred were clearly against the logic and effect of the facts and circumstances before the trial court. Therefore, the trial court's decision to modify physical custody was not an abuse of discretion, and we affirm the trial court's decision. *See, e.g.*, *In re Paternity of J.T.*, 988 N.E.2d 398, 401 (Ind. Ct.

App. 2013) (affirming a trial court's modification of custody where evidence that the mother had routinely denied the father his entitled parenting time established a "substantial change in the interrelationship of the parties").[13]

[63]     Lastly, we address Mother's contention that the trial court abused its discretion by modifying legal custody of C.R. from joint custody to sole legal custody to Father.

[64]     In a paternity action, the considerations for a trial court contemplating joint legal custody are found in INDIANA CODE § 31-14-13-2.3(c),[14] which provides:

> (c) In determining whether an award of joint legal custody under this section would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint legal custody have agreed to an award of joint legal custody. The court shall also consider:
>
> > (1) the fitness and suitability of each of the persons awarded joint legal custody;

---

[13] Mother also argues that the trial court made a "finding that one parent w[ould] be more supportive of the co-parenting relationship in a divided family than the other parent[.]" (Mother's Br. 27). Mother asserts that the trial court erred by relying on this finding when modifying physical custody. Our review of the trial court's order does not reveal such a finding. Furthermore, Mother's citation to DRCB evaluator's trial testimony, which she claims was the basis of the trial court's "finding," appears to be nothing more than a request to reweigh the evidence, which we will not do.

[14] Mother incorrectly cited to INDIANA CODE § 31-17-2-15, the joint legal custody statute applicable to a dissolution proceeding instead of INDIANA CODE § 31-14-13-2.3, the joint legal custody statute applicable to a paternity proceeding. Nevertheless, the language and standard of review of the statutes are similar.

(2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint legal custody;

(5) whether the persons awarded joint legal custody:

> (A) live in close proximity to each other; and
>
> (B) plan to continue to do so;

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint legal custody; and

(7) whether there is a pattern of domestic or family violence.

[65] "Particularly germane to whether joint legal custody should be modified is 'whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare.'" *Julie C. v.*

*Andrew C.*, 924 N.E.2d 1249, 1258-60 (Ind. Ct. App. 2010) (quoting I.C. § 31-17-2-15(2), the joint legal custody statute in a dissolution proceeding).[15]

[66] Here, when establishing Father's paternity in 2010, the parties initially agreed to share joint legal custody. However, in 2012, Father petitioned for a modification of that custody. The DRCB evaluator recommended that Father obtain sole legal custody of C.R. because

> [t]here was a pattern over at least a couple of years about . . . [Mother's] resistance to includ[e] [F]ather with joint decisions as well as . . . constant disputes and denials of parenting time, her overall negative view of him, instability, [and] some concerns she wasn't able to properly meet [C.R.'s] need for counseling and education.

(Tr. 51).

[67] In support of her challenge to the trial court's modification of legal custody, Mother cites to a different portion of the DRCB evaluator's testimony and argues that the evaluator's testimony recommending Father be granted sole legal custody should have been given "little to no weight[.]" (Mother's Br. 21). Mother's arguments are nothing more than a request to reweigh the evidence

---

15 In *Julie C.*, our Court held that a trial court must consider the joint legal custody statute as well as the custody modification statutes discussed above when determining whether to modify joint legal custody. See Julie C., 924 N.E.2d at 1259-60 (discussing these statute in a dissolution proceeding). *But compare Carmichael v. Siegel*, 754 N.E.2d 619, 635 n.7 (Ind. Ct. App. 2001) (explaining that a trial court faced solely with a motion to modify legal custody need consider only the factors in the joint legal custody statute and not the statutory factors in the modification of physical custody) (discussing these statutes in a dissolution proceeding).

and reassess the credibility of witnesses, which we will not do. *See Best*, 941 N.E.2d at 502.

[68] In summary, we conclude that Mother has waived her due process argument by failing to object at trial and that she has failed to meet her burden of showing that there is a basis for reversal of the trial court's custody modification order.

[69] Affirmed.

Baker, J., and Bradford, J., concur.